(No. 15915.—Decree affirmed.)
MAT P. REID *et al.* Appellees, *vs.* JULIA A. REID *et al.* Appellants.

*Opinion filed April 14, 1924.*

TRUSTS—*when heirs are entitled to decree establishing a resulting trust.* Where a husband purchases property and has the title taken in the name of his second wife, his children by his first wife are entitled, after his death intestate, to a decree establishing a resulting trust, where the evidence shows that the property was paid for with money borrowed on a note which was paid off with the husband's earnings, the title being taken in the second wife's name merely to keep peace in the family.

APPEAL from the Circuit Court of Johnson county; the Hon. A. E. SOMERS, Judge, presiding.

J. PAUL CARTER, and H. A. SPANN, for appellants.

O. R. MORGAN, and FOWLER & RUMSEY, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a decree of the circuit court of Johnson county dismissing in part, for want of equity, a bill in chancery filed by appellees to declare a resulting trust in certain real estate and for partition of the same.

The material facts alleged in the bill are, that in 1877 J. E. W. Reid bought 160 acres of land in Johnson county for $1700. One-half of the consideration was paid by him and one-half by his wife, Julia, who was a childless widow when he married her. In 1893 Reid purchased an addi-

tional 30 acres of land for $700, for which he paid out of his own money. The deed to both of said tracts, the bill alleges, was made to Reid's wife in trust, to keep peace in the family. Reid had been married before he married Julia, widow of Thomas Cole, and had two children by his first wife, who are appellees here. Two children were born of the second marriage, Walter and Mollie Reid, who are two of the three appellants. The bill alleges Reid improved the lands by clearing, fencing and erecting buildings and greatly enhanced the value thereof. He gave a good deal of his time to improving and developing the lands, and in the winter season to building houses and barns for other people, he being a good carpenter. Reid died in April, 1922, intestate, and the bill asked that his widow be decreed to hold the title to the undivided one-half of the 160 acres in trust and to the whole of the 30 acres. The bill also alleged there was $5000 in money on deposit in a bank, which belonged to Reid, and asked that that be partitioned also. Julia A. Reid and her two children, Walter and Mollie, answered the bill, denying the material allegations and alleging that Mrs. Reid paid the entire consideration for the 160 acres out of her own means, which she inherited from her former husband, and that the 30 acres was purchased in 1893 for $700, and was paid for, $50 in cash and $650 by borrowed money, and that the borrowed money was repaid by timber sold off of the 160 acres. The answer also averred that the improvements on the farm were made out of the proceeds from it, and that they were managed and directed by Mrs. Reid. The cause was tried before the chancellor, and a decree entered dismissing the bill as to the 160 acres of land and the personal property. The decree found that Reid paid the $700 purchase price for the 30 acres out of his own money, but in order to keep peace in his family he had it deeded to his wife to hold in trust for him, and that at his death she held the title in trust for her husband and was entitled to dower therein. Commis-

sioners were appointed to assign dower and make partition of the 30 acres between the four Reid children, and the widow and her two children by her deceased husband have prosecuted this appeal from that part of the decree.

When the 160 acres was purchased the most of it was uncleared timber land. Soon after its purchase Reid and his wife moved on the land, and he began clearing the timber off of it, or had it cleared off, and fenced and improved it with buildings. Improvements costing several thousand dollars were made on the land. Reid was a carpenter and did a good part of the work erecting buildings himself. He also raised and marketed grain, hay and livestock, sometimes shipping car-load lots. The 30-acre tract was purchased in 1893. It also was timbered, and Reid began improvement by clearing off that land. He must have done a considerable amount of carpenter work for other people, as one of his sons by his first wife testified he had built forty-eight houses and barns. All but $50 of the purchase price was paid to the vendor out of money borrowed on a note given by the Reids and signed by some other people, which was afterwards paid off. Mrs. Reid testified it was paid with timber sold off of the 160-acre tract, while one witness for appellees testified he lived near the Reid farm and that the timber sold off that land was sold eight or ten years before the purchase of the 30-acre tract.

No question is raised as to the correctness of the decree in dismissing the bill as to the 160 acres, and we think the proof shows that the improvements made on that tract were almost entirely made by the labor and management of Reid. He owned nothing unless he had an interest in that land and the personal property thereon as the proceeds of it. Mrs. Reid claimed all the property on the farm, and appellant Mollie Reid testified that when her father died he owned no property, to her knowledge.

While the 160-acre tract is not involved in the appeal, it seems not improper to refer in a general way to the proof

relating to that tract in connection with the 30 acres. It was agreed by counsel that all the parties to the suit should be considered competent witnesses and all might testify. It appears from the testimony that Mrs. Reid inherited from her first husband some personal property. She claims from that property and a gift of $700 from her first husband before his death she paid the purchase price ($1700) for the 160-acre tract of land and that it was improved by the proceeds sold from the land, under her direction. On the other hand, it was testified that Mr. and Mrs. Reid had several discussions about the purchase of the land, in which Reid stated he had furnished one-half the money to pay for it. However the fact may be as to that tract, there was no claim that the 30 acres was paid for with money that Mrs. Reid received from her first husband. That tract was not bought till many years after the purchase of the 160 acres, and it is quite evident the little property Mrs. Reid had received from her first husband had been used up before that time. Reid and his wife lived on the 160 acres and farmed it forty-five years before his death. They possessed, improved and farmed the 30 acres from the time it was purchased, in 1893. The proof fairly shows Reid was an industrious, frugal and thrifty farmer. He raised on the farm and sold considerable quantities of grain, hay and livestock. In addition he was a good carpenter and built a large number of dwelling houses and barns for other people. The conclusion is warranted that his earnings from that source must have amounted to a substantial sum, and that when the 30-acre tract was purchased he was able to earn the money to pay the note on which the money to pay for the land was borrowed. We cannot say the chancellor was not warranted by the evidence in finding that he did pay for it and that his wife held the title in trust.

In our view it is unnecessary to refer to or discuss the authorities, as the proof required to establish a resulting trust and the presumption arising from a conveyance to the

wife when the purchase money is paid by the husband are all well understood. Here it is not claimed Reid paid his own money for the land and made a gift of it to his wife, but the claim of appellants is that Mrs. Reid paid her own money for it, and her daughter testified that her father owned no property at the time of his death. It seems incredible that such a man as the proof shows Reid was, having two children by a former wife, would give all his time and abilities for forty-five years to the accumulation of property for his second wife and his two children by her and leave nothing to his two children by his first wife, when no reason for his doing so is shown by the record. If Reid paid the purchase price for the 30 acres, we think the chancellor was warranted in decreeing that he was the equitable owner and that Mrs. Reid held the title in trust for him. It is evident, we think, from the proof, that in order, as the bill alleges, to keep peace in the family Reid was very subject to obey the orders and directions of his wife, and for that reason the deed for the 30 acres was made to her, not as a gift but to hold the legal title in trust. Every principle of justice demands that the appellees should share equally with their half-brother and half-sister at least in the 30 acres. Appellants were given the sole benefit of forty-five years of the labor and earnings of their and appellees' father in improving and enhancing the value of the 160 acres, and it would seem in all human justice they should be willing to share equally with appellees the 30 acres. They do not appear to be willing to do so, but if the decree was warranted it obliges them to do that. We are of opinion the decree was warranted by the evidence. At all events, we cannot say it is so palpably contrary to the evidence that it should be reversed.

The decree is therefore affirmed.

*Decree affirmed.*