(No. 15982.—Decree affirmed.)

WILLIAM H. CONROY *et al.* Appellants, *vs.* THOMAS B. CONROY *et al.* Appellees.

*Opinion filed June 17, 1924—Rehearing denied October 10, 1924.*

DEEDS—*proof must be clear and convincing to set aside deed for fraud and undue influence.* Before a deed will be set aside for fraud and undue influence complainants must establish their charges by clear and convincing proof, and where they have not done so and there is no evidence of a fiduciary relation or that any influence was exercised in securing the deed the bill must be dismissed for want of equity.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ALLAN A. GILBERT, for appellants.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review a decree of the superior court dismissing for want of equity a bill filed by appellants praying that a certain deed executed by them be set aside on the ground that it was obtained by fraud.

Appellants, William H. and Mary Conroy, are husband and wife. He is a locomotive fireman, with an annual income of about $1000. When appellants were married, in August, 1918, appellee Thomas B. Conroy, an older brother of William, presented appellants with about $1300 worth of furniture as a wedding gift. In order to help them get started he bought the house and lot here in controversy and had it deeded to William. He paid $2300 in cash and William assumed an outstanding mortgage amounting to $3100. William has paid the interest, taxes, insurance premiums and repair charges since he took possession. On March 19, 1919, the warranty deed which is the subject matter of this suit and which conveys to appellees the

property in question was duly executed and acknowledged by appellants.

William testifies that his brother gave him the house and lot as a wedding present and that he has spent $1000 improving it; that his brother delivered to him, shortly after he moved into the property, a bundle of papers which were evidence of his title; that he kept them in a drawer in the house for about a year; that he took the papers to the home of his brother on the morning of March 19, 1919, for the purpose of placing them in his brother's safety deposit box for safekeeping; that his brother's wife, Catherine, told him that it was necessary for him and his wife to sign another paper in order to make their title perfect; that she drove him in her automobile to the office of John W. Utesch, a real estate dealer; that she left him in the car while she went into the office; that she was gone about ten minutes and then returned with Utesch; that they went from there to his home; that Catherine produced a paper and told him and his wife to sign it on the lines indicated, in order to complete their title to the property; that Catherine concealed the contents of the instrument with her hand; that he did not read it and did not know that he was signing a deed; that neither he nor his wife acknowledged the instrument as their deed. His story of the transaction at his home is corroborated by his wife.

Thomas testifies that he purchased the property in question for William with the understanding that William was to return to him the $2300 as soon as he could; that William has never worked steadily and has saved nothing; that he bought this property for him so that he could own his home; that William told him that he planned to be married and that he wanted about $350 with which to buy furniture; that he told William that he would furnish his house for him; that witness and his wife and William and his wife went to a furniture store and bought $1300 worth of furniture; that he made William and his wife a present of

the furniture but did not make him a present of the $2300 paid on the house and lot; that William never re-paid any of the money advanced to him; that he would work one week and lay off a week and was not able to save any money; that he often talked of making payments on the account but never did; that on the morning of March 19, 1919, William came to his house; that witness was sick in bed, and William walked into the bed-room and threw a bundle of papers on the bed and said, "I am giving the house and lot back to you; I don't want it;" that witness then called his office and requested his secretary to have a deed prepared; 'that the deed which is the subject of this suit was prepared and delivered to his house; that he directed his wife to take the deed and have it signed and acknowledged by William and his wife.

Catherine testifies that she drove William in her car to the latter's home; that she stopped on the way for Utesch, who was a notary public, so that he could take the acknowledgment; that when they arrived at William's home they found his wife crying; that witness sympathized with her and expressed her regret that their affairs were in bad shape; that Utesch explained the deed to William and his wife; that they signed the deed and acknowledged it before the notary public. Utesch corroborates the statement of Catherine, and testifies further that Catherine did not conceal any part of the deed while it was being signed and that she was not near the table.

It is argued by appellants that a confidential relation existed between Thomas and William and that the deed in question was obtained by fraud and undue influence. There is no evidence in the record establishing a fiduciary relation between any of the parties to this suit, and if there was there is an entire want of evidence showing that Thomas exercised any influence whatever in securing the deed. The story told by appellants regarding the execution of this deed is unreasonable and is not supported by other witnesses

313—9

nor by surrounding circumstances. Before the court can set aside this deed appellants must establish their charges by clear and convincing proof. This they have failed to do. The notary public who took their acknowledgment to the deed states that he presented the deed to them for their signature and ascertained that they understood what they were doing before he permitted them to sign it. The story told by the witnesses for appellees regarding the execution of this deed harmonizes with the circumstances surrounding the transaction and it impresses us as being true. Whatever the arrangements made at the time the property was conveyed to William, this record shows that appellants voluntarily conveyed the property to appellees. Appellants have sustained none of the charges in their bill and the chancellor properly dismissed it for want of equity.

The decree is affirmed.

*Decree affirmed.*