(No. 16226.—Affirmed in part and reversed in part.)
PATRICK NILAND *et al.* Defendants in Error, *vs.* ANNIE
KENNEDY, Plaintiff in Error.

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. DEEDS—*a fiduciary relation is one founded in trust.* A fiduciary relation is one in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the injured party as would exist against a trustee on behalf of a *cestui que trust.*

2. SAME—*when fiduciary relation exists.* A fiduciary relation exists where there is a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one who reposes confidence and where confidence is reposed on one side and resulting superiority and influence is found on the other.

3. SAME—*fiduciary relation does not necessarily arise out of relation of uncle and niece.* A fiduciary relation does not necessarily arise out of the relation of parent and child, brother and sister or uncle and niece, and a deed from uncle to niece cannot be held to be upon a constructive trust based upon an alleged abuse of a fiduciary relation by the niece, where there is no evidence that the niece ever exercised any control over the uncle in his business or that she ever sought to influence him in making the deed.

4. SAME—*a resulting trust may be established by circumstantial evidence.* While it is essential that parol evidence to establish a resulting trust must be clear, consistent and unequivocal and must establish the payment of the purchase money by the alleged beneficiary beyond reasonable doubt, yet such facts may be satisfactorily established by circumstantial evidence.

5. SAME—*fact that grantee was in impoverished circumstances may be shown.* In a suit to establish a resulting trust it is proper

to prove that the grantee, at the time title was taken in her name, was in impoverished circumstances, for the purpose of showing that it is improbable that she paid the consideration.

6. SAME—*when cestui que trust is entitled to whole estate.* If the purchase money is furnished by the alleged *cestui que trust* it is immaterial that the purchase was made and the money paid by the trustee, and if the latter adds his own funds to purchase money furnished by the *cestui que trust* the burden is on the trustee to prove the amount he advanced, failing which the *cestui que trust* will take the whole estate.

7. SAME—*the cestui que trust may follow fund into other property.* If a resulting trust arises when property is purchased, the *cestui que trust,* or his heirs in his behalf, may follow the trust fund into other property for which the original property was traded.

8. SAME—*effect where grantee assumes incumbrance by recitals of deed.* If property held under a resulting trust is traded for other property, which is deeded to the same grantee, the fact that the grantee assumes an incumbrance by the recitals of the deed does not defeat the resulting trust to the extent of the deferred payments.

9. SAME—*what acts by cestui que trust are not inconsistent with claim of resulting trust.* The facts that the alleged *cestui que trust,* after the property was purchased, kept in his ledger an account headed with the grantee's name, and that he leased, paid taxes on and insured the property in the grantee's name, are necessary incidents to his carrying the legal title in the grantee's name and do not militate against the fact that he furnished the purchase money.

10. SAME—*when the burden of proof is on holder of legal title.* Where it is proved that the purchase money for property was furnished by an uncle and the title taken in the name of his niece the presumption is in favor of a trust resulting to the uncle, and the burden is on the grantee to show that it was intended she should have some beneficial interest in the property; and the fact that she is an incompetent witness, after the uncle's death, to the facts surrounding the purchase does not relieve her of such burden.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

ANDREW R. SHERRIFF, and WALKER BUTLER, for plaintiff in error.

CHARLES B. ELDER, for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Peter Niland died in the city of Chicago on February 6, 1922, leaving as his heirs his brothers, Patrick and Thomas, and his nieces Anna, Josephine and Agnes, daughters of his deceased brother, John, and his niece Annie and nephews Patrick and John, daughter and sons of his deceased sister, Ellen Kennedy. No will has been found. The niece Annie Kennedy was the housekeeper and office assistant of Niland for twelve years prior to his death. At the time of his death she held the legal title to and claimed to be the legal owner of a six-apartment building at 1432-1434 East Sixty-fifth place, in Chicago, where she lived, and a six-apartment building at 6241-6243 Ingleside avenue, Chicago. Defendants in error filed their bill in the circuit court of Cook county asking that plaintiff in error, Annie Kennedy, be held to hold the legal title to the properties in question as trustee for the heirs of Niland, claiming that the East Sixty-fifth place property was purchased with the money of Niland and that a resulting trust arose by reason of this fact in favor of his heirs, and that the Ingleside avenue property was purchased with the money of Niland and the title to the same was secured from him by Annie Kennedy by the abuse of a fiduciary relation existing between them. Annie Kennedy filed her answer denying the allegations of the bill and alleging that she was the owner of the properties in fee and that she had bought and paid for the properties with her own money. The chancellor heard the evidence and rendered a decree granting the prayer of the bill. This writ of error is prosecuted to review that decree.

Peter Niland was born in Ireland about the year 1840. He was one of four brothers, all of whom came to this country and located in Milwaukee. For about thirty-five years prior to his death he was engaged in the real estate business in Woodlawn, a subdivision of Chicago. Prior to

this time he had been engaged as a traveling salesman and as a merchant. He married Mary Kenney and lived with her until her death, in 1910. They had no children. His wife's sister, Kate, lived in their home from the time they located in Chicago until his wife's death. His sister, Ellen Kennedy, who lived in Ireland, was the wife of a blacksmith, and they lived on an eight-acre farm, for which they paid eight pounds a year rent. The house consisted of two rooms meagerly furnished. They had eight children, three of whom survived their uncle, Peter Niland. In 1905, after the death of her father and mother, Annie Kennedy came to America. During the five years intervening between her arrival in this country and her going to live with her uncle she worked as a servant in hospitals, boarding houses and in private homes, her income never exceeding $7 a week. After the death of his wife Niland employed her to keep house for him at a weekly wage of $8. It was his practice in his real estate business to take title to property owned by him in the name of members of his household. At one time he bought a three-flat building and took title to it in his wife's name. Later, in 1904, he bought a two-flat building at 6537 Ellis avenue, Chicago, and took title to it in the name of Kate Kenney. She had no interest in the property, and when she ceased to be a member of his household after the death of his wife she conveyed the lands to Niland by a warranty deed dated May 27, 1910. Five months later he conveyed this property to Annie Kennedy. She held title to it until July 27, 1911, when she conveyed it to Thomas Bishop in exchange for the six-apartment building on Ingleside avenue here in dispute. The full consideration paid for the last mentioned property was $21,000, which consisted of the Ellis avenue property, valued at $7000, a $1500 check, a $500 note, and the assumption of a $12,000 obligation secured by a mortgage on the property. Annie Kennedy held title to the Ingleside avenue property until August 15, 1913, when she conveyed it to

Niland. Thereafter, December 23, 1916, he conveyed the same property to her by a warranty deed in his own handwriting for the stated consideration of $10. September 30, 1910, title was taken in the name of Annie Kennedy to a property at 1322 East Fifty-fourth street, and this was conveyed by her to Sherman T. Cooper on August 7, 1911, in exchange for the six-apartment building on East Sixty-fifth place, where Niland lived at the time of his death. The consideration for this apartment building was the Fifty-fourth street property, valued at $9000, and the assumption of a $12,000 obligation secured by a trust deed to the property. These notes, and the interest thereon, were paid as due and a release deed was delivered to Annie Kennedy on December 13, 1915. The two properties in question were leased by Niland, the leases being signed by him, "A. Kennedy, by Peter Niland, Agt.," and the receipts issued by him for the rents paid were signed, "Peter Niland, Agt." The taxes were paid and the properties were insured in the name of plaintiff in error. All the insurance policies were procured by Niland, who was the agent of the insurance companies, and each of them contained the standard clause: "This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

We shall consider first the Ingleside avenue property. This was undoubtedly bought and paid for by Niland. At the time the Ellis avenue property, which went into this property, was bought and title taken in Annie Kennedy, it is not probable that she had more than $1000, and there is no proof that she had any money. She had no means whatever when she came to America, and we think the evidence warrants the conclusion that she came here through the charity of Niland. Her gross earnings for the five-year period prior to the purchase of this property did not exceed $1800, and it is not reasonable that she could have

saved much more than half of this. There is no evidence in the record that she ever had a bank account prior to the death of Niland or that she had any money when she came to live with him. She does not claim that he gave her the property. There is in evidence an admission made by her that she paid only a part of the purchase price of this property at the time it was bought and that she paid the balance to Niland as she got the money. While defendants in error have laid great stress upon the circumstances surrounding the original trading in this property, we are of the opinion that the question with respect to the Ingleside avenue property is narrowed to the effect of the deed executed by Niland in December, 1916, by which he purported to convey to plaintiff in error the fee simple title to it.

Defendants in error contend, and the chancellor held, that there existed between the parties to this deed, at the time of its execution, a fiduciary relation and that the deed was obtained by fraud. We have read the record with care and we fail to find any evidence establishing either of these facts. A fiduciary relation is one founded in trust,—a relation in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the injured as would exist against a trustee on behalf of the *cestui que trust*. The relation exists where there is a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. It exists where confidence is reposed on the one side and resulting superiority and influence is found on the other. (*Feeney* v. *Runyan, ante,* p. 246; *Campbell* v. *Freeman,* 296 Ill. 536.) A fiduciary relation does not necessarily arise out of the relation of parent and child, (*Chance* v. *Kinsella,* 310 Ill. 515; *White* v. *Ross,* 160 id. 56;) nor of sister and brother, (*Albrecht* v. *Hunecke,* 196 Ill. 127,) nor of uncle and niece. There is no evidence whatever that Niland ever asked of Annie Kennedy, or that she ever gave him, any advice with respect

to his real estate deals or that she ever sought to influence him in any way to make the deed in question. There is no evidence in the record which justifies holding that a fiduciary relation existed between Peter Niland and Annie Kennedy or that she exercised any control over him in his business transactions. If there were evidence of a fiduciary relation there is an entire want of evidence showing that she exercised any influence whatever in securing the deed of December, 1916. Before a court is justified in setting aside a deed and declaring a constructive trust to exist, the proof must be clear, convincing and unequivocal. (*Conroy* v. *Conroy*, 313 Ill. 127; *Winkelman* v. *Winkelman*, 307 id. 249; *Lord* v. *Reed*, 254 id. 350.) The evidence in this record shows that Niland was a successful real estate dealer and a forceful character. Although he suffered the natural disabilities attending old age, he was in full possession of his mental faculties to the last.

Defendants in error having failed to sustain the burden of proof resting upon them to show that the deed here under consideration was obtained by fraud, the chancellor erred in decreeing that Annie Kennedy holds the Ingleside avenue property in trust for the heirs of Peter Niland.

An entirely different situation exists with respect to the apartment building on East Sixty-fifth place, where Niland lived at the time of his death. It is contended by defendants in error that there arises out of the transaction transferring this property to plaintiff in error a resulting trust in favor of the heirs of Niland. Where one person pays the purchase money for the property and the conveyance of the legal title is made to another a resulting trust arises in favor of the person who furnishes the purchase money. After full consideration of all the evidence in the record and the circumstances surrounding the parties to this transaction, we entertain no doubt that Niland furnished all the money and property that made up the purchase price paid for this six-apartment building. There is no evidence in the

record that plaintiff in error had any funds on hand at the time this property was purchased, or at the time of the purchase of the Fifty-fourth street property, which was traded as part consideration for the property in question. She does not allege in her answer that Niland gave her any of this property or the money with which to purchase it, and, having failed to make such an allegation, the defense of gift is not available. (*Mitchell* v. *Clem,* 295 Ill. 150; *Millard* v. *Millard,* 221 id. 86; *Crone* v. *Crone,* 180 id. 599.) Indeed, there is no evidence that he gave her any property or any money with which to purchase property. If we take to be true her self-serving declaration to the effect that she paid to Niland a substantial part of the purchase price of the Ellis avenue property when it was conveyed to her in October, 1910,—and we entertain great doubt of the truth of any of this statement,—this claimed payment would have taken all the money it would have been possible for her to accumulate from the available sources revealed by the evidence. It is proper to show in a case of this kind that the grantee was in impoverished circumstances at the time the property was conveyed to him, for the purpose of showing that it is improbable that he paid the consideration. (*Strimpfler* v. *Roberts,* 18 Pa. St. 283, 57 Am. Dec. 606; *Willis* v. *Willis,* 2 Atk. 71, 26 Eng. Reprint, 443.) While the evidence shows that Annie Kennedy was without means to purchase the property in question or the property traded for it, the evidence abundantly shows that Niland was well able to buy and pay for it. Notwithstanding this, he died with no real estate and little personal property in his name.

It is essential that parol evidence to establish a resulting trust be clear, consistent and unequivocal, and it must establish the fact of the payment of the purchase money by the alleged beneficiary beyond reasonable doubt, but circumstantial evidence may furnish the satisfactory proof necessary to establish the facts from which a resulting trust

arises. (*Reid* v. *Reid*, 312 Ill. 53; *Baughman* v. *Baughman*, 283 id. 55; *Perkins* v. *Nichols*, 11 Allen, (Mass.) 542.) It is immaterial whether the purchase was made and the money paid by the trustee or the *cestui que trust*, (*Hinshaw* v. *Russell*, 280 Ill. 235,) and if the trustee adds his own funds to purchase money furnished by the *cestui que trust* a trust will result to the owner of the trust funds employed, and the burden is on the trustee to show the amount he embarked in the enterprise, and, the trustee failing to sustain this burden, the *cestui que trust* will take the whole estate. (*Ward* v. *Armstrong*, 84 Ill. 151.) If a resulting trust arose in favor of Niland in regard to the East Fifty-fourth street property at the time it was purchased, he, or his heirs in his behalf, can follow the fund and claim the property in question, in which it was subsequently invested by the trade. (*O'Donnell* v. *O'Donnell*, 303 Ill. 31; *Maher* v. *Aldrich*, 205 id. 242; *Seaman* v. *Cook*, 14 id. 501.) The only reasonable conclusion to be drawn from the evidence in this record is that all of the money which went into the property on East Sixty-fifth place, that paid for the East Fifty-fourth street property traded, and that paid to discharge the $12,000 encumbrance assumed, was furnished by Niland, and there was no intention that the grantee should pay anything. And so the fact that the grantee assumed the encumbrance by the recitals of the deed does not defeat the resulting trust to the extent of the deferred payment. *Skahen* v. *Irving*, 206 Ill. 597; *Fleming* v. *McHale*, 47 id. 282 .

After Niland died plaintiff in error said that he had no books or papers and no property, and refused to deliver anything to the administrator until she was compelled to do so by the probate court. On the day of his death she rented a safety deposit box, and its contents have not been revealed. She opened an account with the bank where Niland had transacted his banking business for thirty years and had all the funds in his account transferred to hers. She at-

tempted to have certificates of stock held in his name transferred to her name. She endorsed his name on dividend checks and collected the money on them. It is significant that after she was compelled to deliver his books and papers, envelopes containing his monthly bank statements and canceled checks were found for nearly every month between 1908 and 1922 except those in which these transactions occurred, and that his ledger contained all its pages except the indexed page "N" and the three following. There is, however, in the record a canceled check dated December 10, 1911, signed by Niland, for $330, which is the amount of the half year's interest due on the $12,000 encumbrance at five and one-half per cent, the rate of interest named in the notes secured by the trust deed to the property in question. There is also noted on his statement for the month of June, 1912, the payment of a check for $330, which was the amount of interest due June 10. On the statement for December, 1914, there is a notation of the payment of a check dated December 10 for $1275. On this date one of the $1000 notes was paid, and the $275 equals the interest for the preceding six months' period on the $10,000 principal then outstanding. The fact that Niland kept in his ledger an account headed "Annie Kennedy," respecting this property, and that he leased, insured and paid taxes on it in her name, and that he brought suits to recover unpaid rents in her name, are necessary incidents to his carrying the legal title to the property in her name and do not militate against the fact that he furnished the purchase money.

Where it is shown, as it is by this record, that the purchase money has been furnished by one party and the deed has been made to another, the presumption is in favor of the trust resulting to the party furnishing the consideration, and the burden is on the one holding the legal title to show it was intended he should have some beneficial interest in the property. (*Lutyens* v. *Ahlrich,* 308 Ill. 11; *Crawford* v. *Hurst,* 307 id. 243.) The fact that Annie Kennedy could

not testify to facts surrounding the transaction in question because of incompetency did not relieve her of the burden of establishing her defense with such competent evidence as was available to her. If she was not impoverished and did have the means with which to pay for the East Fifty-fourth street property when it was deeded to her there were undoubtedly sources from which she could have established that fact. She was a competent witness to testify to facts occurring after the death of Niland, and could therefore have offered such explanation as she could of the fact that certain papers and documents of Niland important to establish title to this property were missing when she was compelled to turn over to the administrator his papers and effects. Without further comment, it is sufficient to say that she has failed to sustain her defense, and that defendants in error have furnished evidence which clearly and satisfactorily proves that all of the money and property which contituted the consideration paid for the apartment building in question were furnished by Niland, and that a resulting trust arose in his favor at the time title was taken in the name of Annie Kennedy, and that thereafter she held the property in trust for him and after his death in trust for his heirs. The chancellor saw and heard the·witnesses and his conclusion with respect to this property is fully warranted by the record and will be affirmed.

The decree of the circuit court is affirmed with respect to the six-apartment building known as 1432-1434 East Sixty-fifth place, Chicago, and is reversed and remanded with respect to the six-apartment building known as 6241-6243 Ingleside avenue, Chicago, with directions to deny the relief prayed in so far as it applies to the last mentioned property. The costs in this court will be equally divided between defendants in error and Annie Kennedy, plaintiff in error.    *Affirmed in part and reversed in part.*