# KINZBACH TOOL COMPANY, INCORPORATED, V.
# THE CORBETT-WALLACE CORPORATION ET AL.

No. 7828.  Decided March 4, 1942.
Rehearing overruled April 8, 1942.
(160 S. W., 2d Series, 509.)

*Hardway, Woodruff & Austin,* of Houston, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that plaintiff should not recover the secret commission of $5,000.00. 29 Tex. Jur. 736; 1 Story Eq. Jur., sec. 263; 42 Tex. Jur. 651.

*J. T. Stovall* and *W. F. Tarver* and *Sewell, Taylor, Morris & Connally,* of Houston, for defendants in error.

As to the liability of the defendant corporation to pay the commission in question. Pratt v. Shell Pet. Corp., 100 Fed. (2d) 833; Scott v. Kelso, 130 S. W. 610; Gower v. Andrews, 59 Calif., 119; W. D. Haden & Co. v. Lee, 64 S. W. (2d) 1107.

MR. JUSTICE CRITZ delivered the opinion of the Court.

The pertinent facts of this case, as presented by the record, viewed in the light of the trial court's findings and judgment, are as follows:

This suit grows out of a transaction had between Kinzbach Tool Company and The Corbett-Wallace Corporation, both private corporations. For convenience, we will hereinafter refer to The Corbett-Wallace Corporation as Corbett, and to Kinzbach Tool Company as Kinzbach. During the time here involved Kinzbach and Corbett were engaged in the oil field tool business in the City of Houston, Texas. In March, 1937, Corbett was owner of a sales right contract on a patented tool called "whipstock." Corbett decided that it would make an attempt to sell such contract right to Kinzbach. E. B. Corbett was the president of Corbett and its majority stockholder. Robert Kinzbach was the vice president of Kinzbach. E. B. Corbett and Robert Kinzbach were unfriendly with each other. About March 1, 1937, E. B. Corbett sent word to one G. E. Turner, an employee of Kinzbach that he wanted to see him.

E. B. Corbett knew that Turner was an employee of Kinzbach. In response to E. B. Corbett's message, Turner went to see him. At such meeting E. B. Corbett told Turner that Corbett wanted to sell the whipstock contract to Kinzbach. Corbett then told Turner to see what he could do, and come back and report. In this interview Corbett agreed to pay Turner a commission if the whipstock contract was sold to Kinzbach. Also, in this interview Corbett informed Turner that it wanted $20,000.00 for the whipstock contract, and would pay Turner a commisison out of that figure. In such interview Corbett instructed Turner not to mention to his (Turner's) employer, Kinzbach, what the whipstock contract could be bought for. The general trend of this conversation between E. B. Corbett and Turner was that Turner was given to understand that Corbett wanted to get as much as possible from Kinzbach for the whipstock contract, and would not take less than $20,000.00 for it. Turner was cautioned not to make known this figure to his employer. Turner was to see what Kinzbach would pay, but was not to give Kinzbach any information as to what Corbett wanted for the contract. Turner was to get Kinzbach to make Corbett an offer, but was not to give him any information as to price. It appears that E. B. Corbett, and also one Wallace, vice president of Corbett, had many interviews with Turner after the first one above detailed, in regard to this deal. In none of these interviews were the instructions to Turner above mentioned altered.

At the times above mentioned, and at all times involved in this case, Turner was a trusted employee of Kinzbach, receiving a regular monthly salary. His duties were to sell Kinzbach's products, and he performed such other services as his employer directed.

After the conversation between E. B. Corbett and Turner, above detailed, Turner approached the officers of Kinzbach about buying the whipstock contract from Corbett. Kinzbach advised Turner that they were interested. Frank Kinzbach, the president of Kinzbach, expressly instructed Turner to find out what Corbett would sell for, but not to quote any price.

It appears that there were several conversations regarding this deal between E. B. Corbett and Wallace, and Turner, on the one hand, and Frank Kinzbach, Robert Kinzbach, and Turner, on the other. At some time during these conversations

Turner was advised by Kinzbach that it would probably be willing to pay as much as $25,000.00 for the whipstock contract.

At none of the conversations between Turner and his employer, Kinzbach, did Turner ever disclose that he was to get a commission from Corbett if the whipstock contract was sold to it, Kinzbach. Furthermore, Turner never in any way disclosed to Kinzbach that Corbett might take $20,000.00, and even pay him a commission out of that amount. All this was in spite of the fact that Turner had been instructed by his employer to get from Corbett this very information.

After the above events had transpired, and as a culmination of prior events, Frank Kinzbach, acting for Kinzbach, and W. F. Tarver, acting for Corbett, closed a deal by which Kinzbach agreed to pay Corbett $25,000.00 for this whipstock contract. Under such sale contract Kinzbach paid Corbett $2,500.00 in cash. The balance, $22,500.00, was made payable $2,500.00 January 1, 1938, and $5,000.00 on June 1st of each succeeding year until the full purchase price was paid. The deferred payments were to bear no interest until maturity. A right of acceleration of installments was provided in the event of default in the payment of any installment for six months. The contract also provided for the usual ten per cent. attorney's fees. It is not shown that W. F. Tarver had any knowledge of any transactions with Turner.

After the above deal was fully consummated, Kinzbach for the first time discovered that Turner was to receive a commission of $5,000.00 for the sale of this whipstock contract to it. Kinzbach immediately discharged Turner. It appears that prior to the consummation of the deal Corbett had agreed to pay Turner a commission, but had not agreed what it would be. After the deal was closed Corbett paid Turner $500.00, being twenty per cent. of the $2,500.00 cash paid by Kinzbach. Corbett further agreed to pay Turner twenty per cent. additional, if and when the balance of the payments were made. This left $4,500.00 of Turner's commission unpaid. Under their agreement Turner was to get $500.00 when Kinzbach made payment of the first $2,500.00 deferred installment, and $1,000.00 out of each of the four $5,000.00 deferred installments, when paid.

When the first deferred installment of $2,500.00 on this contract became due, Kinzbach, having found out about Turner's commission, tendered to Corbett the sum of $1,500.00 in full

settlement thereof. Such tender was made on the theory that the $2,500 installment should be credited by the $500.00 commission theretofore paid by Corbett to Turner, and by the additional $500.00 that Turner was to receive out of the proceeds of such first deferred installment. This tender was rejected by Corbett. On June 23, 1938, Kinzbach tendered to Corbett the sum of $2,500.00, on the condition that Corbett would give Kinzbach a receipt showing that such payment was made and received without prejudice to any rights Kinzbach might have against Corbett and Turner. This additional tender was also rejected by Corbett. In November, 1938, Kinzbach tendered to Corbett the $2,500.00 installment unconditionally. This tender was also rejected by Corbett.

After the above events, Kinzbach filed suit against Corbett and Turner, seeking to establish a trust against the $5,000.00 to be paid Turner. Also, on the same day the Kinzbach suit was filed, Corbett filed suit in the same court against Kinzbach, to recover the $2,500.00 installment due June 1, 1938, with ten per cent. attorney's fees. This installment was past due. Both suits were consolidated and tried as one Kinzbach answered the Corbett suit, and set up its defenses, and asked for affirmative relief by way of cross action against both Corbett and Turner.

During the pendency of this suit Corbett filed an amended petition, in which it sought to mature this entire contract with Kinzbach, and sought recovery thereon in the amount of $22,-500, with ten per cent. attorney's fees, $2,250.00.

Kinzbach answered Corbett's amended petition. In such answer Kinzbach pleaded as before, and, in addition thereto, pleaded estoppel against Corbett. Corbett asserted the right to mature its entire contract.

Simply stated, Kinzbach prosecutes and defends this suit on the theory that the facts we have recited constitute such wrongful conduct on the part of Corbett and Turner as entitled it, Kinzbach, to recover against them the $5,000.00 commission paid, and agreed to be paid, by Corbett to Turner. As we understand its pleadings, brief, and argument, Kinzbach in effect contends that it is entitled to have its first $2,500.00 deferred installment credited by $1,000.00, being the $500.00 paid Turner and the $500.00 he would get out of the proceeds of such installment if paid. Kinzbach then contends that it

is entitled to have the four $5,000.00 installments credited by $1,000.00 each. Of course, if this is done, it would follow that Corbett's obligation to Turner for $4,500.00 should be cancelled.

The district court, where the case was tried without a jury, entered the following judgment:

1. Kinzbach was awarded a judgment against Turner for $500.00, being the commission Corbett had paid Turner on the $2,500.00 cash payment made by Kinzbach to Corbett.

2. Corbett was awarded a judgment cancelling its obligation to pay Turner $4,500.00, and the obligation of Kinzbach to Corbett was credited by that sum.

3. Corbett was adjudged to have rightfully accelerated the due dates of the installments due under the contract between it and Kinzbach.

4. It was adjudged that Corbett had the right to recover from Kinzbach the ten per cent. attorney's fees on the sum of $2,500.00 represented by the face of the Kinzbach contract.

As a final result of the above, as between Corbett and Kinzbach, Corbett recovered a judgment from Kinzbach for $20,250-.00. We infer that this sum was arrived at by taking the face of the Kinzbach contract, $22,500.00, and adding ten per cent. thereto, $2,250.00, as attorney's fees, and then deducting from the sum produced the cancelled Turner commission of $4,500.00.

On appeal thereto, the Court of Civil Appeals ruled:

(1) That Corbett's obligation to pay Turner was valid in all respects; and, therefore, same should not be cancelled or annulled.

(2) That Kinzbach's $22,500.00 obligation to Corbett should not be credited by the sum of $4,500.00.

(3) That Turner was rightfully entitled to retain the $500.00 paid him by Corbett.

(4) That in all other respects than as above shown, the judgment of the district court should be affirmed.

As a result of the above rulings, the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment as follows:

I. The judgment of the trial court cancelling Corbett's $4,500.00 obligation to Turner was reversed, and such obligation was decreed to be valid and binding.

II. The judgment of the trial court in favor of Kinzbach and against Turner for $500.00 was reversed, and judgment rendered that Kinzbach take nothing against Turner.

III. Corbett was awarded a judgment against Kinzbach for the sum of $22,500.00, plus $2,250.00 attorney's fees, or a total of $24,750.00. 145 S. W. (2d) 235.

This case is before this Court on writ of error granted on application of Kinzbach.

As we interpret the opinion of the Court of Civil Appeals, it holds that Turner had a lawful right in this instance to contract for and accept a secret commission from Corbett, for services rendered Corbett in assisting it to sell this whipstock contract to Kinzbach. We interpret such holding to be based upon the further holding that Turner did not occupy the status of a fiduciary of Kinzbach in the transactions he had with Corbett and Kinzbach, in an effort to further the consummation of the contract in question here. We are not in accord with such holding.

The term "fiduciary" is derived from the civil law. It is impossible to give a definition of the term that is comprehensive enough to cover all cases. Generally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction. The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations. 25 C. J. ., p. 1118; Peckham v. Johnson (Civ. App.), 98 S. W. (2d) 408; Johnson v. Peckham, 132 Texas 148, 120 S. W. (2d) 786, 120 A. L. R. 720; Swiney v. Womack 343 Ill. 278, 175 N. E. 419; Abbitt v. Gregory, 201 N. C. 577, 160 S. E. 896; Nyland v. Kennedy, 316 Ill. 253, 147 N. E. 117; Lindholm v. Nelson, 125 Kan. 223, 264 Pac. 50; Roecher v. Storey, 91 Mont. 28, 5 P. (2d) 205; Roberts v. Parsons, 195 Ky. 274, 242 S. W. 594; Seely v. Rowe, 370 Ill. 336, 18 N. E. (2d) 874; Bliss v. Bahr, 161 Or. 79, 87 Pac. (2d) 219. Authorities could be cited from practically every State in the Union, supporting the above-stated rule, but we deem that the ones above cited are sufficient.

■■ We now come to determine whether Turner occupied the relationship of a fiduciary to Kinzbach in his transactions regarding this deal. During the negotiations leading to the consummation of this contract, Turner was a trusted employee of Kinzbach, receiving his pay regularly by the month. He had been such employee for some seven years. His duties were to act as a salesman, but he rendered such other services as his employer instructed. Corbett and Kinzbach were not friendly with each other, and could not deal directly. Turner knew this. Corbett decided that it wanted to sell this whipstock contract to Kinzbach. Corbett called Turner, Kinzbach's employee, over the telephone, and arranged an interview with him. At this interview Corbett informed Turner that it wanted to sell this whipstock contract to Kinzbach. In this interview Corbett instructed Turner to see what he could do, and stated that if the deal was made it "would take care of him"; meaning Turner would be paid for his services. In this conversation Corbett gave Turner to understand that it might sell the whipstock contract to Kinzbach for $20,000.00, and would pay him a commission out of that sum. Also, in this interview Turner was told to keep secret from his employer, Kinzbach, what the whipstock contract could be bought for, as Corbett wanted to get as much as it could for it. Turner carried out Corbett's instructions, and approached his employer, Kinzbach, in regard to the purchase of the whipstock contract. Kinzbach advised Turner that it was interested in making the purchase, and instructed Turner to find out what Corbett would sell for, but not to quote it a price. To make a long story short, Turner, Kinbach's trusted employee, permitted his employer to consummate a contract whereby it bought for $25,000.00 that which he, Turner, knew might be bought for $20,000.00. Turner purportedly accepted the instructions of his employer to see what the contract could be bought for without disclosing to it that it could be bought for $20,000.00, and without disclosing to it the fact that he was acting for the opposite side in the deal for a profit to himself. Certainly such a record justified the trial court in concluding that Turner had no right to collect a commission from Corbett. Further, we think that the above record shows, as a matter of law, that Turner abused his fiduciary relationship with Kinzbach. Certainly good conscience and fair dealing called on Turner, as a trusted employee of Kinzbach, when he was told by it to get a price from Corbett, to disclose his adverse interest in the deal. His failure to do this was a violation of his duty, and, therefore, a wrongful act.

Turner contends that he committed no wrong against his employer, Kinzbach, in rendering services to Corbett, (a) because the matter was entirely separate and apart from the ordinary course of his employment with Kinzbach; (b) because he did not purport to represent either Kinzbach or Corbett ·in the transaction, and had no authority to represent them; (c) because he violated no confidence or breach of duty to Kinzbach; (d) because Kinzbach suffered no damage or loss as a result of his, Turner's acts; and (e) because Kinzbach had allowed Turner to do a similar act once before. Corbett, in substance, makes the same contentions as does Turner.

We are unable to agree that the facts of this case bring it within any rule that would make Turner's act and conduct in this instance measure up to the rule of fair dealing and good faith towards Kinzbach, which the law required of him. It is the duty of a fiduciary to deal openly, and to make full disclosure to the party with whom he stands in such relationship. Mecham on Agency, p. 784, sec. 953; id., p. 314, sec. 469; Parks v. Schoellkopf Co., 230 S. W. 704; Scott v. Weaver, 2 S. W. (2d) 870; Peckham v. Johnson, 98 S. W. (2d) 408; Johnson v. Peckham, 132 Texas 148, 120 S. W. (2d) 786, 120 A. L. R. 720. One occupying a fiduciary relationship to another must measure his conduct by high equitable. standards, and not by the standards required in dealings between ordinary parties. Peckham v. Johnson, supra; Johnson v. Peckham, supra. Turner's position as a trusted employee of Kinzbach, in the capacity already detailed, called on him to make full disclosure to his employer of all the facts and circumstances concerning his dealings with Corbett. Also, when he received instructions from Kinzbach to get a price from Corbett it was his duty as a fiduciary to inform his employer what the whipstock contract might be bought for. It was also his duty to make disclosure to his employer that he was ·getting a commission from Corbett.

■ It is beside the point for either Turner or Corbett to say that Kinzbach suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may

hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary "takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust; and a breach of confidence, and he must account to his principal for all he has received." United States v. Carter, 217 U. S. 286, 30 Sup. Ct. 520, 54 L. Ed. 775, 19 Am. Cas. 594. See also Ash v. A. B. Frank Co., 142 S. W. 42; Armstrong v. O'Brien, 83 Texas 635, 19 S. W. 268.

It is contended that on a former occasion, in a matter involving a small amount, Turner was guilty of conduct similar to this as regards Kinzbach, and that Kinzbach knew such fact and did not complain thereof. We do not think that the mere fact that Kinzbach may have overlooked such former act, licensed Turner, as a matter of law, to violate his fiduciary relationship in this instance.

■ It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such. 2 Tex. Jur., p. 557; Miller v. Himebaugh, 153 S. W. 338; Wm. Cameron & Co. v. Blackwell, 53 Texas Civ. App. 414, 115 S. W. 856. It follows that when Corbett employed Turner, who it knew was Kinzbach's fiduciary, under the circumstances and conditions we have already detailed, it became a party to the breach of duty committed -by Turner, and therefore became a joint tort-feasor with Turner with regard to the rights of Kinzbach.

■ It appears that when the first installment of $2,500.00 became due on this contract, Kinzbach tendered to Corbett, in payment thereof, the sum of $1,500.00. This was all that was due, because Kinzbach had a right to deduct therefrom the $500.00 Turner had received on the $2,500.00 cash payment it had made and the $500.00 Turner was to receive out of the proceeds of such installment. Corbett absolutely rejected such tender, thereby absolutely rejecting Kinzbach's right to any credit for Turner's commissions. It is therefore evident that it would have been useless for Kinzbach to make any tender of payment on any subsequent installment due under this contract, with Turner's commission thereon deducted therefrom. The law does not require an actual tender when the party to whom the money is due has signified in advance that he will

refuse to accept it. It is sufficient to say that we think Kinzbach has made all tenders that were required of him under the facts of this record.

It appears that all installments due to be paid by Kinzbach to Corbett under this contract are now due without any acceleration.

The judgments of the Court of Civil Appeals and district court are both reversed and set aside, and this cause is remanded to the district court with instructions as follows:

(1) If Kinzbach promptly tenders into court, for the benefit of Corbett, the sum of $17,500.00, such sum shall be awarded to Corbett in full payment of Kinzbach's obligation to it on this contract. This sum is arrived at by deducting from the $22,500.00 the $5,000.00 Turner commission.

(2) Corbett's obligation to Turner, in the sum of $4,500.00, shall be cancelled.

(3) If Kinzbach fails to make prompt payment to Corbett in the sum of $17,500.00, as above indicated, the court will enter judgment for that amount plus ten per cent. thereof. as attorney's fees, in favor of Corbett and against Kinzbach.

(4) If Kinzbach makes prompt payment. of the $17,500.00, as above directed, judgment shall be entered against Corbett and Turner for all costs in this case in the district court. If Kinzbach fails to make such payment, and judgment is entered for Corbett against Kinzbach for $17,500.00 plus ten per cent. attorney's fees, the trial court is left with the power to apportion costs as in his sound judgment may be just and right, giving due consideration to the matters litigated herein and the things which have caused the accumulation of costs.

(5) Corbett and Turner shall pay all costs occasioned by this appeal in Court of Civil Appeals and in this Court.

(6) Any matters which may come before the trial court, not covered by the above instructions, are left to be adjudicated by that court.

Opinion delivered March 4, 1942.

### MOTIONS FOR REHEARING AND TO FURTHER INSTRUCT THE DISTRICT COURT.

This cause is before us on two motions, viz.:

(a) Motion No. 15475, which is a motion for rehearing filed by The Corbett-Wallace Corporation.

(b) Motion No. 15476, which is a motion filed by Kinzbach Tool Company, Inc., to further instruct the district court.

We have read and carefully considered the motion for rehearing filed herein by The Corbett-Wallace Corporation, and still adhere to the views expressed in our original opinion. It is therefore ordered that same be in all things overruled.

We have read and carefully considered the motion to further instruct the district court filed herein by Kinzbach Tool Company, Inc., and, in our opinion, same should be granted. It is therefore ordered and adjudged that in addition to the instructions given to the trial court in our original opinion and judgment the following instruction is given:

(4-A) If it should appear on remand that Corbett has enforced the erroneous judgment of the trial court by execution or otherwise, then the trial court shall render judgment that plaintiff take nothing by its suit, and that Kinzbach on its cross-action recover of Corbett that portion of the $5,000.00 secret commission remaining after deducting enough thereof, which, together with the amount collected by Corbett plus interest at the legal rate on the $2,250.00 attorney's fee and on the accelerated installments from the date collected, will equal and extinguish $22,500.00, the balance of the contract price.

Opinion delivered April 8, 1942.