DALLAS FIRE INSURANCE
COMPANY, Petitioner,

v.

TEXAS CONTRACTORS SURETY AND
CASUALTY AGENCY, Tom Young
and Fred Thetford, Respondents.

No. 04–0215.

Supreme Court of Texas.

Dec. 17, 2004.

Rehearing Denied March 11, 2004.

Bernard R. Suchocki, Jerry D. Bullard, and Scott A. Cummings, Suchocki, Bullard & Cummings, Fort Forth, for Petitioner.

James Lanter, Lanter Westermann, P.C., Fort Worth, Jefferson W. Autrey, Keith Gregory Hopkinson, Kevin Norton, Cantey & Hanger, L.L.P., Austin, for Respondents.

PER CURIAM.

Article 21.21 of the Insurance Code provides a private cause of action for unfair or deceptive acts or practices in the business of insurance. TEX. INS.CODE art. 21.21, § 16(a). In *Great American Insurance Co. v. North Austin Utility District No. 1*, we held that suretyship was not included in the scope of this provision. 908 S.W.2d 415, 424 (Tex.1995). The court of appeals here interpreted that holding to apply only to suits between sureties and their bondholders, and thus affirmed a judgment under article 21.21 in a suit between a surety and its sales agents. 128 S.W.3d 279, 288–89, 304. Because our previous opinion excluded the business of suretyship rather than the particular parties involved, we hold the court of appeals' opinion conflicts with ours,[1] and reverse the court of ap-

---

1. TEX. GOV'T CODE § 22.001(a)(2).

peals' judgment and render judgment that respondents take nothing.

In December 1993, Texas Contractors Surety and Casualty Agency (TCSCA) signed an Agency–Company Agreement to issue surety, performance, and bid bonds on behalf of Dallas Fire Insurance Company. For each surety bond TCSCA sold, Dallas Fire agreed to pay a straight commission,[2] plus a contingency profit commission based on premiums collected adjusted by a loss ratio reflecting losses and expenses.[3]

For the years 1994 and 1995, Dallas Fire calculated the contingency commission using only *direct* expenses (such as legal and consulting fees) incurred in handling bond claims, and paid respondents on that basis. But for 1996, Dallas Fire calculated the contingency commission to reflect its own *indirect* expenses (such as salaries, rent, and other overhead) as well, thus denying respondents any contingency commission. Dallas Fire also recalculated the contingency commission for previous years, and demanded reimbursement on that basis.

TCSCA filed suit, and Young intervened for breach of his separate agreement incorporating similar terms. Both respondents alleged breach of the Agency–Company Agreement and deceptive acts in violation of article 21.21. *See* Tex. Ins.Code art. 21.21, § 16(a) (defining deceptive acts to include violations of Texas Business & Commerce Code section 17.46(b)); Tex. Bus. & Comm.Code 17.46(b)(12) (defining deceptive acts to include representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law). The jury found for Dallas Fire on the breach of contract question, but for respondents under article 21.21, and awarded $56,641.02 in damages to TCSCA and $82,641.02 to Young.

Dallas Fire asserts that respondents have no article 21.21 claim because *Great American* excludes the business of suretyship from the "business of insurance" under that article, and the parties' relationship consisted of nothing else. As this was the only basis for respondents' recovery, Dallas Fire asserts we must reverse and render judgment against them. We agree.

As we have previously noted, the Insurance Code is somewhat different from Texas's other statutory codifications in that it is not a formal, unified Code containing uniform definitions. *Great Am.*, 908 S.W.2d at 424. Thus, "the business of insurance" has meant different things in different sections of the Code. For example, at all times applicable here, suretyship was expressly *included* in the "doing an insurance business" in former article 1.14–1,[4] but expressly excluded in article 21.55, section 5(a)(4). *Id.* at 423–24.

While acknowledging our holding in *Great American* that the "business of insurance" in article 21.21 does not include suretyship, the court of appeals read that case narrowly to apply only to disputes between a surety and its obligee. 128 S.W.3d at 289. It is true that we pointed

---

**2.** While the Agreement was in effect, TCSCA earned in excess of $800,000 in such commissions.

**3.** The Agreement called for a contingent profit commission of 5 percent on all earned bond premiums, decreasing 1/2 percent for each 1 percent increase in the "loss ratio" above 20 percent. Therefore, if the "loss ratio" in-

creased by 10 percent or more, no contingent profit commission was owed.

**4.** Act of May 28, 1987, 70th Leg., R.S., ch. 254, § 1, 1987 Tex. Gen. Laws 1573, 1573, *repealed by* Act of May 17, 1999, 76th Leg., R.S., ch. 101, § 1, 1999 Tex. Gen. Laws 486, 525–26 (current version at Tex. Ins. Code § 101.051).

out particular difficulties that would arise in the surety-obligee relationship if article 21.21 applied. *Great Am.*, 908 S.W.2d at 422–23. But we also noted that the suretyship business predated the insurance business "by thousands of years" and had different characteristics. *Id.* at 424 (noting that insurance involves spreading risks with no right of indemnity, while suretyship involves risk of initial payment with full right of indemnity).

More important, our holding in *Great American* was not limited to *parts* of the business of suretyship:

> Given the unique character, rights, and obligations of suretyship, and the complexities that would result by the imposition of liability under 21.21, we cannot conclude that the Legislature intended to include suretyship in the definition of the business of insurance under article 21.21. Absent a clear legislative directive, we conclude that suretyship, as historically understood in the insurance and suretyship fields, does not constitute the business of insurance under article 21.21.

*Id.* This holding leaves no room for applying article 21.21 to parts of the surety business.

The court of appeals also relied on evidence that Dallas Fire's primary line of business (though not through TCSCA) was commercial liability insurance, that its surety bonds were "insurance products" for the purpose of licensing under article 21.02, and that TCSCA sold surety bonds through agents licensed by the Texas Department of Insurance. 128 S.W.3d at 291. But as already noted, the business of in-

surance is defined differently in different sections of the Insurance Code, and all that is involved here is a commission dispute involving the sale of surety bonds. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex.1998) (holding surety bonds to be insurance products for purposes of article 21.02, though not for article 21.21). Here, TCSCA's claims arose in the business of suretyship, not the business of insurance.[5]

By limiting the scope of article 21.21 to the business of insurance, the Legislature intended it to apply to a species of economic enterprise, not to particular contracts on a piecemeal basis. Accordingly, without hearing oral argument, we grant the petition for review, reverse the judgment of the court of appeals and render judgment that respondents take nothing. TEX.R.APP. P. 59.1.

---

**5.** Respondents contend that in *Crown Life Insurance Co. v. Casteel*, we extended the reach of article 21.21 beyond claims between an insured and insurer. 22 S.W.3d 378, 385 (Tex.2000). But *Casteel* involved a claim against a life insurance carrier and its agent based on inaccurate language and illustrations contained in life insurance policies sold by Crown's agent, William Casteel. *Id.* at 381–82. Thus, *Casteel* clearly involved the "business of insurance" and not the business of suretyship, which is implicated in this case.