**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

W. CLAYTON RASH,

        Plaintiff-Appellee,

    v.

J.V. INTERMEDIATE, LTD., a Texas
Limited Partnership, successor by
conversion to Joint Venture Piping,
Inc., a Texas Corporation, and J.V.
INDUSTRIAL COMPANIES, LTD., a
Texas Limited Partnership, successor
by conversion to J.V. Piping, Inc.,

        Defendants-Appellants.

No. 06-5128

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 04-CV-681-FHM)**

---

Steven M. Harris (C. Matthew Bickell with him on the briefs) Doyle Harris Davis
& Haughey, Tulsa, Oklahoma, for Appellants.

David E. Jones (Donna L. Smith with him on the brief) Logan & Lowry, LLP,
Tulsa, Oklahoma, for Appellee.

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

This diversity case requires us to apply Texas law to three issues arising from claims that an employee secretly owned a company that competed and contracted with his employer: (1) the existence and scope of a fiduciary duty between an agent and a principal, (2) the propriety of the equitable remedy of forfeiture for breach of a fiduciary duty, and (3) the operation of the statute of frauds with respect to employment contract extensions.

Since the employee in this case owed a fiduciary duty to disclose his interest in a company doing business with his employer, the district court erred in dismissing the employer's claim for breach of a fiduciary duty. We remand for determination of damages on the claim. We also remand the forfeiture issue for further consideration in light of our holding on the fiduciary duty claim. We affirm the district court's evaluation of the statute of frauds.

## I. Factual Background

J.V. Intermediate, Ltd. and J.V. Industrial Companies, Ltd. (collectively, "JVIC") are Texas-based companies which build, refurbish, expand and manage assets for industrial process plants worldwide. JVIC hired W. Clayton Rash to start and manage a Tulsa, Oklahoma division of its industrial plant maintenance business, inspecting, repairing, and maintaining oil refineries and power plants. The parties signed an employment agreement providing Rash a base salary of $125,000, a bonus of 20% of JVIC-Tulsa's net profits, and a termination bonus of 20% of the division's equity. The contract stipulated the use of Texas law and

required that Rash "devote [his] full work time and efforts" to JVIC. The agreement was to last for two years, from 1999 to 2001. Rash continued to serve as manager of the Tulsa branch until 2004, without any written contract extension.

Starting in 2001, JVIC claims that Rash actively participated in and owned at least four other businesses, none of which were ever disclosed to JVIC. One of those businesses was Total Industrial Plant Services, Inc. (TIPS), a scaffolding business. TIPS bid on projects for JVIC-Tulsa, and JVIC-Tulsa, with Rash as its manager, often selected TIPS as a subcontractor. At some point during Rash's tenure, JVIC started its own scaffolding business.[1] Between 2001 to 2004, JVIC paid over $1 million to TIPS. The Tulsa division never used JVIC's scaffolding services.

Rash resigned from JVIC in July 2004.

## II. Procedural History

Rash subsequently sued JVIC for breach of contract and fraud. He claimed the company purposely understated the net profits and equity of the Tulsa branch and therefore did not properly pay him the net profit and equity bonuses. As affirmative defenses and counterclaims, JVIC claimed that Rash (1) materially

---

[1] JVIC contends that its scaffolding division started in 2001. Rash claims he did not know about JVIC's scaffolding business until 2003.

breached his employment agreement, (2) breached his duty of loyalty, and (3) breached his fiduciary duty.

Prior to trial, JVIC filed a summary judgment motion seeking a finding that the statute of frauds barred enforcement of the employment contract. JVIC contends that Rash could not recover unpaid bonuses earned after the expiration of the initial two-year term because the employment contract was not renewed in writing. The district court found for Rash, holding the statute of frauds did not apply.

At trial, the district court submitted various instructions to the jury relating to Rash's contract claims. In addition, the court granted Rash's Rule 50 motion for a judgment as a matter of law on JVIC's counterclaim for breach of fiduciary duty. *See* Fed. R. Civ. P. 50. The jury was therefore only instructed on one of JVIC's counterclaims—the breach of the duty of loyalty. Rash requested a damages award of $564,993 for his breach of contract claim and the jury granted him $444,933. JVIC sought $143,000 in damages for its breach of the duty of loyalty claim and received $71,500 from the jury.

After the jury verdict, JVIC filed a (1) motion for a new trial, Fed R. Civ. P. 59(a), (2) renewed motion for judgment as a matter of law on the fiduciary duty claim, *id.* R. 50(b), (3) motion for the equitable relief of fee forfeiture due to Rash's duty of loyalty violation, (4) motion to alter or amend the judgment, *id.* R.

59(e), and (5) motion to vacate the verdict, *id*. R. 60(b)(6). The district court denied all JVIC's motions.

JVIC timely filed a notice of appeal.

### III. Analysis

JVIC appeals the district court's orders relating to (1) fiduciary duty, (2) fee forfeiture, and (3) the statute of frauds.

We review a district court's disposition of motions for summary judgment and motions for judgment as a matter of law de novo, *Miller v. Auto. Club of New Mexico, Inc.*, 420 F.3d 1098, 1102–03 (10th Cir. 2005), applying the same legal standard that the district court applied. *See David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Estate of Simper,* 407 F.3d 1126, 1130–31 (10th Cir. 2005) (reviewing summary judgment motion de novo); *Marshall v. Columbia Lea Reg'l Hospital*, 474 F.3d 733, 738 (10th Cir. 2007) (reviewing a motion for judgment as a matter of law de novo). We construe all factual inferences in the light most favorable to the non-moving party. *Miller*, 420 F.3d at 1102–03.

We apply Texas law pursuant to the choice of law provision in the JVIC-Rash employment contract, reviewing the district court's interpretation and determination of state law de novo. *Freightquote.com, Inc. v. Hartford Cas. Ins.*, 397 F.3d 888, 892 (10th Cir. 2005). "Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the

state court would make if faced with the same facts and issue." *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006) (internal quotation omitted).

## A. Fiduciary Duty

JVIC argues that the district court erred in granting Rash's Rule 50 motion seeking judgment as a matter of law on JVIC's breach of fiduciary duty counterclaim at the close of evidence. We agree. Not only do we find that Rash's agency relationship with JVIC created a fiduciary obligation, but that the undisputed evidence also showed that Rash breached his fiduciary duty.

### 1. Is there a fiduciary relationship?

To recover for breach of fiduciary duty, the evidence must prove "the existence of a fiduciary duty, breach of the duty, causation, and damages." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App. 2003). Fiduciary duties are imposed by courts on some business relationships because of the special trust between the parties. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002). Yet, Texas courts have deemed it "impossible to give a definition of the term that is comprehensive enough to cover all cases." *Id.* at 199. "[G]enerally speaking, it applies to any person who occupies a position of peculiar confidence towards another." *Id.* This broad definition includes relationships of "integrity and fidelity" and contemplates "fair dealing and good faith" rather than legal obligation, as the basis of the transaction. *Id.* Nevertheless, Texas courts also warn that it is well settled that "not every

relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–177 (Tex. 1997).

Under Texas law, fiduciary relationships can arise from both formal and informal relationships. An informal fiduciary relationship may flow from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). "[I]n order to give full force to contracts, [Texas courts] do not create such a [informal fiduciary] relationship lightly." *Schlumberger Tech. Corp.*, 959 S.W.2d at 177. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 288.

Texas courts also recognize that certain relationships constitute formal fiduciary relationships as a matter of law. Examples of these fiduciary relationships are trustee to beneficiary, executor to beneficiary of estates, attorney to client, and partner to partner. *Johnson*, 73 S.W.3d at 200. Under Texas common law, the agent to principal relationship also gives rise to a fiduciary duty. *Id.*

With respect to the agent to principal relationship, the Texas Supreme Court has adopted relevant provisions of the Restatement (Second) of Agency.

*See id.* In particular, § 387 provides: "[U]nless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency (1958). "The agreement to act on behalf of the principal," moreover, "causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Id.* § 13, cmt. a.

Accordingly, under Texas law a fiduciary relationship may exist between Rash and JVIC in two circumstances, if the evidence established that: (1) Rash was an agent of JVIC, or (2) a prior "special relationship of trust and confidence" exists between the two.

The district court determined as a matter of law that no fiduciary duty existed between Rash and JVIC, relying heavily on *Meyer v. Cathey*, 167 S.W.3d 327 (Tex. 2005). In *Meyer*, the Texas Supreme Court found no fiduciary duty based on a mere "business arrangement" with no preexisting special relationship of trust and confidence. *Id.* at 331. Meyer hired Cathey to work on various real estate development projects. A lower court found a fiduciary relationship existed between the two where (1) the two worked on past projects together for three years, (2) Cathey had a minor ownership interest in one of Meyer's past projects, (3) Meyer was in charge of all aspects of his projects and made all final decisions including controlling the financing and books, while Cathey trusted him to treat

him fairly and keep accurate financial records, and (4) they were friends. *Id.* at 330.

The Texas Supreme Court reversed the decision, holding that (1) reliance on the two's prior projects was "misplaced" because they were "arms-length transactions entered into for the parties' mutual benefit," (2) Cathey's subjective trust in Meyer does not establish a fiduciary relationship, and (3) the fact of their friendship was irrelevant. *Id.* at 331. Based on *Meyer*, the district court held that no special relationship of trust and confidence existed between Rash and JVIC and dismissed the breach of fiduciary duty claim.

The district court erred in concluding that *Meyer* was controlling over this case. *Meyer* is limited in scope to analysis of *informal* fiduciary relationships based on a "moral, social, domestic or purely personal relationship of trust and confidence." *Id.* at 331. *Meyer* contemplated a situation involving an arm's length relationship between real estate "business associates," *id.* at 329, and not between employee to employer or principal to agent.

*Meyer*, in short, does not apply to fiduciary duties based on *formal* relationship such as agency. Thus, *Meyer* is not on point where a party, as is the case here, alleges a fiduciary duty arises from a principal to agent relationship.

First, several Texas cases provide strong support for JVIC's claim that Rash was its agent. In *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185–86 (Tex. App. 2005), a Texas appellate court found an agency relationship

and thus a fiduciary duty under a similar set of facts. In *Daniel*, the employee "was hired to serve as a project manager and on-site superintendent for the project and . . . was responsible for soliciting bids, setting the scope of work for each subcontractor, reviewing the bids, letting the contracts, and overseeing people working on the project." In addition, the Texas Supreme Court has found fiduciary relationships in the employment context in two other cases, *Johnson*, 73 S.W.3d at 193 (law firm employee); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942) (oil company employee).

Rash's duties to JVIC follow the facts of these cases. Rash was hired to build the Tulsa division of JVIC from scratch and had sole management responsibilities for operations at the branch. In Rash's own words, "I did the sales, the operations, and everything out of the Tulsa division." Aplts. App. Vol. IV at 1289. He was charged with finding facilities to operate the business, hiring and training employees, gathering tools and equipment for the branch, and promoting the new venture. Rash solicited and received bids for subcontracts and directly received the invoices for those bids. He set the rates charged to JVIC's customers for work performed by the Tulsa division and kept track of all the costs of the division. In general, Rash conceded that he "ran the shop" and was "responsible for generating business for the Tulsa upstart." *Id*. at 1257.[2]

_____

[2] Rash contends in this appeal that his authority was rather limited. He claims that the main office of JVIC in Houston approved the subcontracts with

(continued...)

Second, Rash contractually agreed to perform the duties of an agent. Under Texas law, an agent is defined as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Daniel*, 190 S.W.3d at 185. In his contract, Rash consented to "devote [his] full work time and efforts to the business and affairs of Joint Venture Piping."

Third, Rash does not deny that he was an agent of JVIC. Instead, he only claims that the scope of his agency did not include scaffolding-related ventures.

Under these facts, an agency relationship exists between Rash and JVIC. Rash was hired to introduce the JVIC brand in a new market with little direct oversight. For all purposes, he represented JVIC in the Oklahoma region. As the senior manager in the area, he agreed to and was expected to act primarily for the benefit of JVIC.

---

[2](...continued)
TIPS and determined the creditworthiness of other Tulsa division customers. Such constraints on Rash do not obviate his status as an agent for JVIC. First, no evidence in the record shows that the JVIC main office ever overrode any of the subcontracts approved by Rash. Second, Rash concedes that he had the ability to negotiate contracts on behalf of JVIC. *Cf.* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("Agents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive information on their behalf."). Lastly, Rash's authority over subcontracts is identical to the agent in *Daniel*. In *Daniel*, the agent "received and reviewed proposals and bids from subcontractors. He was instrumental in determining which subcontractors would be selected for work . . . . In some cases, he awarded subcontracts to subcontractors." 190 S.W.3d at 182. There is no doubt that Rash was equally instrumental in selecting subcontracts for JVIC-Tulsa.

Accordingly, we conclude under the uncontroverted evidence that Rash was an agent of JVIC and thus owed JVIC a fiduciary duty as a matter of law. *See Meyer*, 167 S.W.3d at 330 ("Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court.").

### 2. Did Rash breach his fiduciary duty?

Whether Rash breached his fiduciary duty to JVIC turns on the scope of that duty. In *Johnson,* the Texas Supreme Court cautioned courts to "be careful in defining the scope of the fiduciary obligations an employee owes when acting as the employer's agent in the pursuit of business opportunities." 73 S.W.3d at 201. Courts instead inquire whether a fiduciary duty exists with respect to the particular occurrence or transaction at issue. *Id.* at 200–03. After careful consideration of the question, we are confident that Texas courts would agree on this record that Rash violated his fiduciary duty in failing to disclose his interest in TIPS to JVIC.

Texas law recognizes several basic duties a fiduciary owes the principal:

> Among the agent's fiduciary duties to the principal is the duty to account for profits arising out of the employment, the duty not to act as, or on account of, an adverse party without the principal's consent, the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them.

*Id.* at 200 (citing Restatement (Second) of Agency § 13, cmt. a (1958)).[3]

Additionally and most importantly for this appeal, the "employee has a *duty to deal openly with the employer and to fully disclose* to the employer information about matters affecting the company's business." *Abetter Trucking Co.*, 113 S.W.3d at 510. Although "an employee does not owe an absolute duty of loyalty to his or her employer," *Johnson*, 73 S.W.3d at 201 (acknowledging the right of employees to make *preparations* for a *future* competing business venture while still employed), at the very least, an employee's independent enterprise cannot compete or contract with the employer without the employer's full knowledge.

Here, Rash presents two defenses: (1) as a manager of JVIC's general industrial plant maintenance work, he owed no specific duty to JVIC's relatively minor scaffolding business, and (2) JVIC's president, Joe Vardell, told him that he had no problem with Rash forming a business which might contract with JVIC. Yet, these defenses, even if true, misapprehend the nature of his fiduciary duty.[4]

---

[3] *See also* Restatement (Third) of Agency § 8.04 (2006):

Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors. During that time, an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship.

[4] And we doubt these defenses accurately reflect the record. First, JVIC engages in the industrial plant maintenance of oil refineries and power plants. The procurement of scaffolding is a necessary part of this maintenance work. Thus, although Rash may not have had a specific fiduciary duty to Vardell or

(continued...)

-13-

As discussed above, Rash had a "duty to deal fairly with the principal in *all* transactions between them," *id.* at 200 (emphasis added), and "to *fully* disclose to the employer information about matters affecting the company's business," *Abetter Trucking Co.*, 113 S.W.3d at 503 (emphasis added).

In other words, Rash had a "general duty of full disclosure respecting matters affecting the principal's interests and a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *United Teachers Ass'n Ins. Co. v. MacKeen & Bailey, Inc.*, 99 F.3d 645, 650 (5th Cir. 1996). Even assuming that Rash had no responsibilities to JVIC regarding the scaffolding division or that Vardell gave him hypothetical permission to engage in other businesses, by failing to inform JVIC specifically of his ownership stake in TIPS, he violated his fiduciary duty.

---

[4](...continued)
JVIC's scaffolding business, he surely had a duty to act fairly and faithfully in JVIC's *selection* of scaffolding subcontractors. Rash should have disclosed his financial interest in awarding subcontracts to TIPS for scaffolding projects. Rash's undisclosed double-dealing violated his duty as a manager of the Tulsa branch.

Second, Vardell contends that Rash only asked him for permission to start a "tool rental company" and not a rivalrous scaffolding operation. Aple. Supp. App. Vol. I at 285, 288. Rash claims Vardell gave his "blessing when he said that he didn't mind me having other business as long as I stayed arm's length from it." Aplts. App. Vol. IV at 1300. These facts fall far below carte blanche "consent" for Rash to operate side businesses competing directly with JVIC.

The duty of an agent is to disclose to the principal what the principal should rightly know. The facts are uncontroverted that (1) Rash possessed a significant ownership stake in TIPS, (2) TIPS bid for subcontracts with JVIC-Tulsa, (3) Rash played an instrumental role in selecting JVIC-Tulsa's subcontractors, (4) TIPS was selected as a JVIC-Tulsa subcontractor on several occasions, and (5) Rash never disclosed to JVIC or its president, Vardell, his relationship with TIPS. In fact, Vardell testified that he only learned about Rash's ownership of TIPS through this litigation. In our estimation, this amounts to a breach of his fiduciary duty as a matter of law. *Cf. Kinzbach Tool Co.*, 160 S.W.2d at 514 (holding that a salesman violated his fiduciary duty as a matter of law when he withheld the fact that he received a secret commission from a third-party in negotiating a deal for his employer).

This would be a different case altogether if Rash simply notified Vardell or JVIC about his relationship with TIPS. Since he did not, JVIC was entitled to judgment as a matter of law on its breach of fiduciary claim against Rash.

### 3. Is the error harmless?

Rash asserts that the district court's failure to submit the breach of fiduciary duty claim to the jury is harmless error. His theory is that since the jury awarded JVIC damages on the analytically similar breach of the duty of loyalty claim, it would not have acted differently on the fiduciary duty claim. We disagree. Since the jury awarded JVIC only $71,500 of the $143,000 it sought in

-15-

damages under the duty of loyalty claim, we cannot say if it might have awarded

a higher damage amount under a breach of fiduciary duty theory.

With regards to the duty of loyalty claim, the jury was instructed that an

"employee has a duty not to compete with his employer, without the consent of

the employer, prior to leaving his employment." Jury Instruction No. 15, Aplts.

App. Vol. IV, at 1161. "This duty is in addition to the duties the parties

undertook in the employment contract." *Id.* JVIC had the burden of establishing

the breach of the duty of loyalty. *Id.* The instruction was based on the "common

law duty" not to compete with one's employer as found in *Baty v. Protech Ins.*

*Agency*, 63 S.W.3d 841, 852–53 (Tex. App. 2001).

Yet, the fiduciary relationship establishes a distinct and separate obligation

than the duty of loyalty to an employer described above. The fiduciary duty

exists because of the "peculiar" trust between the employee-agent and his

employer-principal. *See Johnson*, 73 S.W.3d at 200. Thus, the bonds created by

a fiduciary relationship are stronger and the obligations are correspondingly more

rigorous than those ascribed to the duty of loyalty. For instance, under Texas

law, JVIC would have been entitled to the following instruction:

> [As JVIC's agent,] [Clayton Rash] owed [JVIC] a fiduciary duty.
> To prove he complied with his duty, [Clayton Rash] must show:
>     a. the transaction[*s*] in question [*was/were*] fair and
>     equitable to [JVIC];
>     b. [Clayton Rash] made reasonable use of the confidence
>     that [JVIC] placed in *him*;

-16-

c. [Clayton Rash] acted in the utmost good faith and exercised the most scrupulous honesty toward [JVIC];

d. [Clayton Rash] placed the interests of [JVIC] before *his* own, did not use the advantage of *his* position to gain any benefit for *himself* at the expense of [JVIC], and did not place *himself* in any position where *his* self-interest might conflict with *his* obligations as a fiduciary; and

e. [Clayton Rash] fully and fairly disclosed all important information to [JVIC] concerning the transaction[*s*].

State Bar of Texas, Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment PJC 104.2 (2006 ed.).

A jury could draw several conclusions from this instruction. First, Rash's fiduciary duty to JVIC may be considered more wide-ranging than his duty not to compete. Accordingly, a jury could have believed that Rash's actions were a more egregious violation under a fiduciary theory than under a loyalty theory. Second, the jury charge shifts the burden of proof from JVIC to Rash. A jury could have thought that JVIC's proof of Rash's violation of his fiduciary duty was much stronger than Rash's showing that he complied with that duty.

Since we cannot say for certain that a breach of fiduciary duty would not lead to a greater damage award, we cannot hold the error was harmless. Accordingly, we remand this question to the district court to determine the amount of damages Rash owes JVIC for the breach of his fiduciary duty.

We close with one final note. At trial, JVIC argued that the breach of fiduciary duty claim was an alternative, and not a supplement, to the duty of loyalty claim and that there is only one damage award. Because of JVIC's

-17-

position, a jury determination on the damages for breach of fiduciary duty must be offset by the award for the breach of the duty of loyalty claim– i.e., $71,500. [Aplts. App. Vol. V at 1458]. JVIC is only entitled to collect up to $143,000.

**B. Fee Forfeiture**

JVIC also argues that the breach of a fiduciary duty is a defense to Rash's breach of contract claim and, under Texas law, requires that Rash forfeit any compensation he is entitled to receive from JVIC.

JVIC claims at trial that (1) it was entitled to a jury instruction on the affirmative defense of the breach of fiduciary duty, and (2) the district court should have applied the equitable remedy of forfeiture to Rash's breach of contract claim. Since we hold that Rash was a fiduciary, JVIC was entitled to a fee forfeiture analysis.

### 1. The nature of fee forfeiture

Fee forfeiture is a proper equitable remedy in response to a breach of contract claim. In *Burrow v. Arce*, 997 S.W.2d 229, 244 (Tex. 1999), the Texas Supreme Court describes forfeiture as a "defense of an agent's claim for compensation." Forfeiture is based on the concept that "[a]n agent is entitled to no compensation for a service which constitutes a violation of his duties of obedience." *Id.* (citing Restatement (Second) of Agency § 469). "[I]f such conduct constitutes a wilful and deliberate breach of his contract of service, he is

-18-

not entitled to compensation even for properly performed services for which no compensation is apportioned." *Id.* at 237.

Forfeiture is based on two propositions: (1) the principal is considered not to have received what he bargained for if the agent breaches his fiduciary duties while representing the principal, *id.* at 237–38, and (2) fee forfeiture is designed to discourage agents from being disloyal to their principal or "to protect relationships of trust by discouraging agents' disloyalty," *id.* at 238. The remedy of forfeiture "applies generally in agency relationships." *Id.* at 242–43; *see also Lee v. Lee*, 47 S.W.3d 767, 780 (Tex. App. 2001) ("*Arce* applies to any breach of fiduciary duty case where the plaintiff pleads the equitable remedy of fee forfeiture.").

Forfeiture only applies to "clear and serious" violations of fiduciary duty. *Burrow*, 997 S.W.2d at 241. The *Burrow* court surveyed the factors for determining when forfeiture is appropriate across several fields. *Id.* at 241–45. In summary, "relevant considerations include the gravity and timing of the violation, its wilfulness, its effect on the value of the [agent's] work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies." *Id.* at 241. The *Burrow* court also makes clear that this remedy is to be determined by the court, not the jury. *Id.* at 245 ("The ultimate decision on the amount of any fee forfeiture must be made by the court.")

## 2. *Application of fee forfeiture*

The district court here did not engage in any of the foregoing analysis as it concluded that Rash was not a fiduciary of JVIC under Texas law. *See* Dist. Ct. Order, June 27, 2006, at 1–2 ("Since Defendants did not establish the existence of a fiduciary relationship, they are not entitled to the equitable relief of forfeiture which may flow from a breach of that relationship.").

Rash nonetheless makes several arguments on appeal that fee forfeiture is unwarranted here. First, he argues any error that the district court made in finding no fiduciary relationship was harmless because the jury found Rash breached the duty of loyalty. This is unpersuasive. As we discussed above, Rash abused his agency relationship with JVIC, and it is entitled under Texas law to consideration of its forfeiture theory.[5]

Second, Rash claims that JVIC failed to properly plead forfeiture, thereby precluding it as a remedy. This argument was presented to the district court,

---

[5] On the issue of the district court's denial of an instruction for the affirmative defense of breach of fiduciary duty, we would find any error harmless. Fee forfeiture would offset the jury's award of damages in Rash's breach of contract claim. In effect, fee forfeiture serves as JVIC's affirmative defense to Rash's contract claim. Thus, any relief based on the failure to provide the jury with a breach of fiduciary duty defense instruction would be merely duplicative on remand. More significantly, JVIC provided no authorities or analysis as to whether a breach of fiduciary duty may properly serve as an affirmative defense to a contract claim under Texas law and thus waived the issue. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.,* 97 S.W.3d 179, 198–99 (Tex. App. 2002) (holding that party asserting error bears the burden of proving that a proposed jury question was substantially correct).

which found it properly pleaded and made a substantive ruling. *See Lee*, 47 S.W.3d at 781 (holding that raising forfeiture in the trial court suffices to properly plead forfeiture).

Finally, Rash contends that forfeiture is not an available remedy since JVIC sought actual damages and was adequately compensated. *Burrow* specifically forecloses this line of reasoning. "The adequacy-of-other-remedies factor does not preclude forfeiture when a client can be fully compensated by damages. Even though the main purpose of the remedy is not to compensate the client, if other remedies do not afford the client full compensation for his damages, forfeiture may be considered for that purpose." *Burrow,* 997 S.W.2d at 243–44. The court also suggests that forfeiture may take on a punitive nature. *Id.* at 240 ("Forfeiture may . . . have a punitive effect, but that is not the focus of the remedy."). Nevertheless, we do agree that the adequacy of JVIC's other remedies is a significant equitable factor in the fee forfeiture analysis.

JVIC urges this Court to administer complete forfeiture without remand based on the jury verdict that Rash violated his duty of loyalty. Since the district court did not weigh the factors found above in the first instance, we decline to do so on appeal.

Accordingly, the district court must determine on remand whether forfeiture was appropriate and, if so, what amount, in light of (1) the damages received by JVIC on its breach of the duty of loyalty/fiduciary duty claim, (2) the

interest in "protect[ing] relationships of trust from an agent's disloyalty or other misconduct," *id.*, and (3) "weighing of all other relevant considerations," *id.* at 245.[6]

## C. Statute of Frauds

The final issue is whether the extension of Rash's contract beyond the two-year limit violates Texas's statute of frauds.

The statute of frauds requires that any "agreement which is not to be performed within one year from the date of making the agreement" must be in writing or it is not enforceable. Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (Vernon 2007). Since Rash's original contract was for two years, JVIC asserts that its implied renewal was unenforceable for lack of a written extension. On a summary judgment motion by JVIC, a magistrate judge found that the implied extension of the JVIC-Rash employment agreement did not offend the statute of frauds since it occurred only on a month-to-month basis. The district court

---

[6] Should contested facts arise out of considerations of the fee forfeiture factors, a party may be entitled to have a jury resolve the fact question. *See Burrow*, 997 S.W.2d at 245. The *Burrow* court warns that "a dispute concerning an agent's culpability — whether he acted intentionally, with gross negligence, recklessly, or negligently, or was merely inadvertent" as well as the "value of the agent's services and the existence and amount of any harm to the principal" may present issues for a jury. *Id.; Deutsch v. Hoover, Bax & Slovacek, L.L.P.,* 97 S.W.3d 179, 193 (Tex. App. 2002) (holding that trial court erred in deciding forfeiture when genuine issues of material fact existed). *But see Dallas Fire Ins. Co. v. Texas Contractors Sur. & Cas. Agency,* 128 S.W.3d 279, 303 (Tex. App. 2004) (finding it within the discretion of a trial court to deny forfeiture where a party fails to request or obtain pertinent jury findings), *rev'd on other grounds,* 48 Tex. Sup. Ct. J. 200 (Tex. 2004).

adopted this reasoning. While the original employment agreement between Rash and JVIC was subject to the statute of frauds, because its extension occurred on an indefinite or month-to-month basis, we agree that the statute of frauds does not preclude the contract's enforcement.

JVIC relies on *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795 (Tex. App. 2005), to support its contention that Rash's implied contract extension violates the statute of frauds. In *Farone*, an employee signed a two-year employment agreement—a contract falling into the statute of frauds. At the expiration of the two-year term, the parties did not enter another written agreement but the employee continued his service to the employer. Several years later, the employee was fired. The employee later sued claiming he was not an at-will employee and his termination violated the terms of his contract.

A Texas appellate court found the contract unenforceable. An employment agreement originally subject to the statute of frauds cannot be extended or renewed by implication beyond one year after the expiration of its initial term without a successive agreement in writing as required by the statute of frauds. *Id.* at 800. "[T]here may have been implied agreements to continue the original contract; but, without a further writing during each period of extension of the original two year agreement, any subsequent agreements are not enforceable." *Id.* at 801. The court then barred the enforcement of the contractual restriction on the employee's termination and deemed him an employee-at-will. *Id.*

Under JVIC's reading of *Farone*, *any* extension of a contract that originally falls within the statute of frauds must be in writing to be enforceable. JVIC asserts that Rash and Vardell's oral or implied agreement to continue the contract violated the statute of frauds under *Farone*.

Nevertheless, we agree with the district court that *Farone* does not govern this case. First, we note that the statute of frauds is silent on the issue of contract extension or renewal. Nothing in the statute compels JVIC's reading of *Farone* that *any* extension of a contract originally subject to the statute of frauds must be in writing. *See* Tex. Bus. & Com. Code Ann. § 26.01.

Second, while somewhat unclear under Texas law, the better interpretation of *Farone* is that the court found the *entire* contract, including its more-than-one-year term, was renewed, thus causing it to violate the statute of frauds. As the court held, "[t]he original contract could not be performed within one year. Any implied renewal of the contract, therefore, could not be performed within one year." *Id.* at 801. This language only makes sense if the court found that the parties in *Farone* extended the contract *in toto* or, more significantly, for more than one year. We construe *Farone*'s broad statements prohibiting extension of contracts originally under the statute of frauds in light of its finding that the parties extended the contract for more than one year. *Farone* is thus inapplicable where parties impliedly extend a contract for less than one year or on an indefinite basis.

-24-

In other words, nothing in *Farone* precludes parties from impliedly renewing a contract or extending its time period beyond its express terms *indefinitely or for less than one year*. So, *Farone* is distinguishable from this case where the district court found that the implied extension or renewal was only on a month-to-month basis.[7]

Third, Texas law specifically excludes indefinite term employment contracts from the operation of the statute of frauds. *See Double Diamond, Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 268 (Tex. App. 2003) ("[A]n oral indefinite-term employment contract is not prohibited by the statute of frauds."); *see also Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974) ("If a contract can, from the terms of the agreement, be performed within one year it is not within the Statute of Frauds."). We see no reason to exclude the renewal or extension of an employment contract on an indefinite basis from this safe haven solely because the original contract was subject to the statute of frauds.

---

[7] Nor do we find the magistrate judge and the district court's finding of fact that the Rash contract was extended on a month-to-month basis clearly erroneous. Vardell testified that JVIC and Rash "just kept going" with the contract after its initial two-year term expired. Aplt. App. Vol. II at 453. He also stated that the contract governed JVIC's relationship with Rash until his resignation. *Id.* Rash affirmed that Vardell assured him, "Clayton, as long as you're with J.V., that contract is good 'til the end." Aplt. App. Vol. 1 at 165. Such testimony shows that the parties intended to extend or renew the contract on an indefinite basis. The court's construction of that time as a month-to-month basis is not unreasonable.

Finally, the purpose of the statute of frauds is to "remove uncertainty, prevent fraudulent claims, and reduce litigation." *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984). Where parties wish to renew or extend a contract, even one originally subject to the statute of frauds, on an indefinite or less-than-one-year basis, we do not believe the evils to be avoided by the statute of frauds come into play. After all, it is "well settled in Texas that a continuance of the employment relationship in accordance with the terms of a written employment contract after the contract has expired by lapse of time is a continuance of the old contact as a matter of law." *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 166 (Tex. App. 1996).

To bar the enforcement of the renewal or extension of a contract originally subject to the statute of frauds would, in our view, increase uncertainty, fraud, and litigation and unsettle well-established legal rules. Accordingly, we decline to follow JVIC's interpretation of *Farone* and affirm the district court's ruling that Rash's contract claims were not partially barred by the statute of frauds.

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's finding that Rash was not a fiduciary as a matter of law.

We REMAND this case to the district court for (1) a jury determination of the damages attendant with JVIC's breach of fiduciary duty claim, and (2) a judicial determination of the propriety of the remedy of forfeiture in this case.

-26-

We AFFIRM the district court's holding on the statute of frauds.