2013 UT App 138

# THE UTAH COURT OF APPEALS

SPENCER LAW OFFICE, LLC,
Petitioner,
*v.*
DEPARTMENT OF WORKFORCE SERVICES,
WORKFORCE APPEALS BOARD,
Respondent.

Memorandum Decision
No. 20110915-CA
Filed May 31, 2013

Original Proceeding in this Court

Stephen D. Spencer, Attorney for Petitioner
Jaceson R. Maughan, Attorney for Respondent

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
 which JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.

ROTH, Judge:

¶1     Spencer Law Office, LLC (Spencer) challenges the decision
of the Workforce Appeals Board (the Board) that a former
employee (the Claimant) was entitled to unemployment benefits
because Spencer had not discharged him for just cause. We decline
to disturb the Board's decision.

¶2     In the middle of a work week, Spencer was approached by
one of his employees, a first-year associate attorney (the Attorney),
who explained that he would be leaving his position effective the
following Monday and going into practice for himself. The
Attorney also informed Spencer that the Claimant, a non-attorney
legal assistant, would be leaving with him. Immediately after his
conversation with the Attorney, Spencer confronted the Claimant
and asked him how long he had been planning to leave and join the
Attorney's new practice. The Claimant did not deny that he was
considering a job offer from the Attorney but explained that the

Attorney had made the offer only a day or two before. The Claimant also described some of the ways he thought that he and the Attorney could better run a practice—for example, reducing overhead costs by leasing a more cost-effective office space in the downtown area. However, the Claimant told Spencer that he needed to discuss the matter with his wife before making a decision to leave Spencer's employment. That evening, Spencer contacted both the Claimant and the Attorney and terminated their employment.

¶3    The Department of Workforce Services (the Department) initially denied the Claimant's application for unemployment benefits. The Claimant appealed the Department's decision, and a hearing was held before an Administrative Law Judge (the ALJ). The ALJ awarded unemployment benefits to the Claimant, concluding that Spencer did not have just cause to discharge the Claimant. Spencer appealed, and the Board affirmed the ALJ's decision. We decline to disturb the Board's decision.

¶4    Even if an employer has a legitimate reason for discharging an employee, "not every legitimate cause for discharge justifies a denial of [unemployment] benefits." Utah Admin. Code R994-405-201. Rather, unemployment "[b]enefits will be denied if [a] claimant was discharged for just cause." *Id.* (providing further that benefits may also be denied if the claimant was discharged "for an act or omission in connection with employment . . . which was deliberate, willful, or wanton and adverse to the employer's rightful interest"). "To establish just cause for a discharge , . . . three elements must be satisfied:" culpability, knowledge, and control. *Id.* R994-405-202. Culpability is established if "[t]he conduct causing the discharge [is] so serious that continuing the employment relationship would jeopardize the employer's rightful interest." *Id.* R994-405-202(1). Next, "[t]he claimant must have had knowledge of the conduct expected" by the employer. *Id.* R994-405-202(2). And finally, "[t]he conduct causing the discharge must have been within the claimant's control." *Id.* R994-405-202(3)(a).

¶5    On review, the Board's factual findings will be reversed only if they are not supported by substantial evidence. *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 8, 157 P.3d 334.

"Substantial evidence is more than a mere scintilla of evidence . . . though something less than the weight of the evidence." *Grace Drilling Co. v. Board of Review of Indus. Comm'n*, 776 P.2d 63, 68 (Utah Ct. App. 1989) (omission in original) (citation and internal quotation marks omitted). It "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). In addition, the Board's application of the law to a particular set of facts is given a degree of deference and will not be disturbed if within the realm of reasonableness and rationality. *EAGALA, Inc.*, 2007 UT App 43, ¶ 9.

¶6 Here, the Board found that the Claimant had been considering a job offer but had not yet decided to accept it and leave Spencer's employment. The Board reasoned that the Claimant's mere consideration of a job offer did not jeopardize Spencer's "rightful interest" and therefore concluded that Spencer did not have just cause to discharge him. In challenging the Board's decision, Spencer argues that the Board's factual findings are not supported by substantial evidence and fail to accurately describe the Claimant's conduct that led to his discharge. Spencer also argues that the Board's application of the facts to the law in reaching its conclusion that Claimant was not discharged for just cause is not reasonable or rational. We address each of these arguments in turn.

## I. The Board's Factual Findings

¶7 Spencer asserts that the Board's finding that the Claimant was only considering a job offer is not supported by substantial evidence. Rather, Spencer argues that the facts show that the Claimant had decided to leave his employment and join the Attorney in his new practice. Spencer also argues that the Board's findings are otherwise insufficient because they understate the gravity of the conduct that led to the Claimant's discharge. We conclude that the Board's factual findings are supported by substantial evidence.

A. There Is Substantial Evidence To Support the Board's Finding that the Claimant Was Only Considering a Job Offer.

¶8 At a hearing to determine whether the Claimant had been discharged for just cause, the Claimant testified that when confronted by Spencer, he had not yet decided whether to accept the job offer. Rather, he described many of the competing considerations he was having to weigh in deciding whether to stay at his current job with Spencer or accept the new job offer. The Claimant testified that he felt like he was forced to consider the Attorney's job offer for his own "economic survival." However, he had hoped that there might still be an opportunity to "cure the relationship" between him and Spencer.[1] The Claimant also explained that he wanted to discuss such an important issue with his wife before making a decision. According to the Claimant, when Spencer confronted him, he had not yet decided whether to remain at his job or depart with the Attorney. At a second hearing on a related but separate issue involving only the Claimant, however, the Claimant explained that he had been "realizing [that he] probably [was] not going to see any kind of an immediate result" and felt that the situation with Spencer was not reparable and that he "had no other decision except to try to launch off [with the Attorney] on [their] own."

¶9 Spencer contends that the Claimant's testimony at the two hearings was contradictory and that his statements at the second hearing prove that he was not simply considering a job offer but had already made up his mind to leave. Spencer thus argues that in light of the totality of the evidence, the Board's factual finding that the Claimant was only considering a job offer and had not yet

---

1. Spencer and the Claimant's relationship was strained, apparently because Spencer had fired the Claimant once before, a few weeks earlier as part of a reduction in force. According to Spencer, he had hired the Claimant based on the Claimant's representation that he would generate a certain weekly revenue, for which he would receive a certain weekly pay. But after a few months, the revenue generated by the Claimant was not as high as the Claimant had predicted, so Spencer laid him off. The next day, however, the Claimant and Spencer negotiated the Claimant's return to work at a lower salary.

made up his mind when Spencer confronted him is not supported by substantial evidence. We cannot agree. Although Spencer himself offered testimony that would have supported a contrary finding, there is nevertheless substantial evidence to support the Board's finding.

¶10    The Claimant testified that when he spoke with Spencer, he had not yet decided whether to leave, thus providing direct evidence of his state of mind at the time. We cannot conclude that the Claimant's testimony at the two hearings is as fatally contradictory as Spencer argues. At both hearings the Claimant addressed the various considerations that supported a decision to leave Spencer's employment and join forces with the Attorney, and his statement at the second hearing suggests that his intention to leave Spencer's employment was more definite than does his testimony at the just cause hearing. But his testimony at the just cause hearing focused on his mind-set at the particular moment when Spencer confronted him, while the testimony at the later hearing addressed his thinking more generally. The fact that a comparison of the two may support a conclusion that the Claimant was telling the truth at the second hearing and not at the first does not foreclose a conclusion that the opposite is true or that the Claimant was simply irresolute until Spencer discharged him, even if leaving Spencer's employment enticed him more than staying.

¶11    Furthermore, Spencer's testimony that the Attorney told him that the Claimant had decided to leave and join his practice does not necessarily undermine the Claimant's explanation of the events. Because this information was secondhand and there was no testimony from the Attorney to explain why he had told Spencer this, it is not apparent whether Claimant actually had decided to leave or whether the Attorney only thought the Claimant had made up his mind. Further, that the Claimant did in fact go into business with the Attorney after being discharged by Spencer does not prove that he actually had made up his mind to do so when confronted by Spencer. Indeed, it is unsurprising that, after being discharged, the Claimant would accept an available job offer and that he and the Attorney would proceed with starting a practice consistent with their prospective plans, regardless of how certain those plans were at the time of the Claimant's discharge.

¶12    Ultimately, both the Claimant and Spencer similarly described their conversation, but they offered conflicting interpretations of what was said. The Board resolved those conflicts in favor of the Claimant, and we cannot say that the Board acted unreasonably in doing so. In the end, "it is the province of the Board, not the appellate courts, to resolve conflicting evidence," and we cannot conclude that the evidence supporting the Board's decision was either insubstantial or, as a matter of law, required a different decision than the Board arrived at with regard to the Claimant's intentions at the time he was confronted by Spencer. *See EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 16, 157 P.3d 334 ("It is not this court's place to substitute its judgment as between two reasonably conflicting views . . . ." (citation and internal quotation marks omitted)). We therefore decline to disturb the Board's finding.

B. Spencer's Other Factual Allegations Are Not Supported by the Evidence.

¶13    Spencer also argues that the Board's findings are inadequate because they understate the gravity of the conduct that led to the Claimant's discharge. Spencer argues that the evidence should have been construed so as to reach a conclusion that the Claimant had been plotting with the Attorney to start a new practice and take Spencer's clients and then attempted to deceive Spencer about their plan. Spencer's argument is not supported by the evidence. For example, on appeal Spencer has accused the Claimant of attempting to purposefully conceal his decision to leave so that he could steal Spencer's clients. However, at the hearing before the ALJ, Spencer himself stated that he had "no evidence" to suggest that the Claimant "had any part in compiling [a] client list before anyone ever announced . . . [a] contemplation of departure."[2]

---

2. At the hearing, Spencer testified that he had several clients call and ask for refunds within two to three days after he had discharged the Attorney and the Claimant. All of these clients, however, appear to have been "domestic relations clients," and the

(continued...)

Spencer also relies on evidence that he says shows that the Claimant was involved in a similar scheme in 2005 to prove that the Claimant was repeating the same behavior. The Board declined to consider this evidence, however, and Spencer has not challenged the basis for the Board's evidentiary decision. Therefore, there is no basis in the record for Spencer's argument in this regard. Spencer's arguments that the Board misconstrued the gravity of the Claimant's conduct associated with his departure from Spencer's employ do not raise a viable challenge to the Board's findings.

## II. The Board's Determination that the Claimant Was Discharged Without Just Cause

¶14    Spencer next challenges the Board's determination that he did not have just cause to discharge the Claimant. Spencer's challenge seems to focus most directly on the culpability element of the just cause analysis: whether the conduct that resulted in the Claimant's discharge was "so serious that continuing the employment relationship would jeopardize . . . [Spencer's] rightful interest."[3] *See* Utah Admin. Code R994-405-202(1). To define the scope of his "rightful interest" as an employer, Spencer generally relies on the employee's fiduciary duty of loyalty to the employer, in particular an employee's duty not to compete with his or her

---

2. (...continued)
Claimant had been involved only with clients who were defendants in criminal cases where Spencer had been the attorney of record; there is no evidence that any of the criminal-defendant clients called asking for refunds after the Claimant's discharge. Based on this information, Spencer conceded at the hearing that Claimant had not been involved in compiling a client list.

3. Spencer similarly argues that the Claimant is ineligible for benefits because he was discharged "for an act or omission in connection with employment . . . , which was deliberate, willful, or wanton and adverse to the employer's rightful interest." Utah Admin. Code R994-405-201. However, he does not assert any significant legal distinction between these two bases for discharge, so we focus on the just cause analysis, as did the Board.

employer. Spencer argues that the Claimant engaged in a wide spectrum of conduct that would violate this duty. At one end of the spectrum, assuming that the Claimant had decided to accept the Attorney's job offer, Spencer argues that the Claimant had a duty to disclose his plans to leave his current employment and start a competing practice with the Attorney. But on the other end of the spectrum, Spencer argues that even if the Claimant was merely considering the Attorney's job offer, he nonetheless had a duty to disclose to Spencer the Attorney's plans to start a competing practice as well as the fact that the Attorney had offered him a job. According to Spencer, the Claimant's failure to disclose any of this information violated the duty of loyalty and thus jeopardized his rightful interest, giving him just cause to discharge the Claimant.

¶15    Spencer criticizes the Board's decision for not addressing whether the Claimant breached the duty of loyalty. Indeed, having found that the Claimant was merely considering a job offer, the Board did not specifically address whether the Claimant had breached a duty of loyalty but simply concluded that the Claimant's consideration of a job offer was not conduct that would jeopardize Spencer's rightful interest. In addition, the Board reasoned that "[t]here is no indication [that the Claimant] did anything wrong or acted in a manner that jeopardized [Spencer's] rightful interests," noting that Spencer "testified that he had no evidence to suggest the Claimant was involved in poaching clients or using [Spencer's] resources or proprietary information in order to work at the new firm." Notably, some of the facts on which Spencer's argument is premised—those that fall on the more extreme end of the spectrum and involve interpreting the evidence to find that the Claimant had already made a decision to join the Attorney in his new practice—are contrary to the Board's factual findings, which we have declined to disturb. Those arguments therefore fail because they lack factual support. But Spencer also argues that certain conduct by the Claimant that is not foreclosed by the Board's factual findings—facts that fall on the other side of the spectrum and involve the Claimant's consideration of a job offer and knowledge about the Attorney's plan to leave—was also a violation of his duty of loyalty. He therefore asserts that the Board erred in failing to address this argument. However, we conclude that the Board did not err in this regard because the case

law on which Spencer relies does not extend the duty of loyalty as far as he contends.

¶16    As support for his argument that the Claimant breached a duty of loyalty by planning to leave for other competing employment, Spencer cites to *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, 94 P.3d 179. There, the court explained that "an agent[, such as an employee,] is subject to a duty not to compete with the principal[, such as his employer,] concerning the subject matter of his agency [or employment]." *Id.* ¶¶ 20–22 (citation and internal quotation marks omitted). Based on this rule, the court concluded that, in particular, lawyers have an "obligation to not compete with their employer," which the court defined as "any law firm or legal service provider who may employ them in a legal capacity, without the employer's prior knowledge and agreement." *Id.* ¶ 23. Further, to support his contention that the Claimant should have disclosed to him not only the job offer but also the Attorney's plans to leave and start a competing business, Spencer cites *Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201 (10th Cir. 2007), for the proposition that an "employee has a duty to deal openly with the employer and to fully disclose to the employer information about matters affecting the company's business." *Id.* at 1210 (emphasis, citation, and internal quotation marks omitted). The court in *Rash* also explained that "[a]lthough an employee does not owe an absolute duty of loyalty to his or her employer, at the very least, an employee's independent enterprise cannot compete or contract with the employer without the employer's full knowledge." *Id.* (citation and internal quotation marks omitted). Based on this authority, Spencer concludes that the Claimant's knowledge of or participation in a plan to depart and start a competing business, whether or not it involved wrongful conduct such as taking client lists or poaching clients while still employed, violated the Claimant's duty not to compete with Spencer and, therefore, jeopardized Spencer's "rightful interest," giving him just cause to discharge the Claimant.

¶17    Spencer, however, presents an incomplete analysis of the case law upon which he relies. In explaining the general concepts that Spencer uses to support his argument, the court in *Rash* cites a case that more fully explains an employee's duty to disclose

outside employment plans to his employer, *Johnson v. Brewer & Pritchard, PC*, 73 S.W.3d 193 (Tex. 2002). *See Rash*, 498 F.3d at 1207–11. In *Johnson*, the court explained that an employer-employee relationship "is . . . a special [agency] relationship that gives rise to a fiduciary duty." 73 S.W.3d at 200. The court cautioned, however, that "courts . . . should be careful in defining the scope of the fiduciary obligations an employee owes when acting as the employer's agent in the pursuit of business opportunities," for although an employee should not compete with the employer for whom he still works, the "employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition." *Id.* at 201. The *Johnson* court thus concluded that an "employee may properly plan to go into competition with his employer and may take active steps to do so while still employed" and "has no general duty to disclose his plans to his employer" and, further, that "he may secretly join other employees in the endeavor without violating any duty to his employer." *Id.* (citation and internal quotation marks omitted). In contrast, the court in *Prince Yeates* did not address what an employee may do in preparing to leave while still acting according to the duty to not compete with an employer. Rather, *Prince Yeates* involved circumstances where the employee clearly competed with his employer while still employed. *See* 2004 UT 26, ¶¶ 7, 19, 24.

¶18   Thus, based on the line of authority that Spencer has relied on, his arguments ultimately fail. *Prince Yeates* is inapplicable because it addresses an employee's duty to not compete with the employer while still employed. Here, there is no evidence that the Claimant began competing with Spencer while still employed; rather, he considered an offer from another employee to leave Spencer's employ and *then* enter into competition with Spencer. Under *Johnson*, which seems to fit the circumstances of this case better than *Prince Yeates*, the Claimant had "no general duty to disclose his plans to his employer" and could plan to go into business with the Attorney and compete with Spencer and could even "take active steps to do so while still employed" "without violating any duty to his employer." *Id.* (citation and internal quotation marks omitted). Spencer's claim that the Claimant violated a fiduciary duty of loyalty by failing to disclose the Attorney's plans or by planning himself to leave with the Attorney

to start a competing practice therefore is not supported by the authority upon which Spencer relies. As a consequence, Spencer cannot demonstrate that the Claimant's conduct "jeopardize[d his] rightful interest." *See* Utah Admin. Code R994-405-202(1). Thus, the Board's determination was reasonable and rational.

¶19    We conclude that the Board's factual findings are supported by substantial evidence. We also conclude that Spencer has not shown that the Board's determination that he lacked just cause to terminate the Claimant exceeds the bounds of reasonableness or rationality. Accordingly, we decline to disturb the Board's ruling that the Claimant was not discharged for just cause.[4]

---

4. It may be worth noting that by upholding the Board's determination that Spencer did not have just cause to discharge the Claimant, we are not passing judgment on whether his decision to do so was unreasonable from the perspective of a business owner faced with the circumstances that occurred here. An argument can certainly be made that it was not unreasonable for Spencer to be concerned about and to take steps to address a perceived threat to his practice when he discovered that the Attorney was leaving to compete with him and apparently intended to take another employee with him, even if the employee was not yet fully resolved to leave and no breaches of the duty of loyalty had actually occurred. Under such circumstances, an employer of at-will employees might make a legitimate business judgment to terminate their employment in an effort to protect what he perceives to be a potential threat to his interests. But as we have explained, even if an employer has a plausible reason for discharging an employee, "not every legitimate cause for discharge justifies a denial of [unemployment] benefits." Utah Admin. Code R994-405-201.